## Marsh *versus* Nelson.

1. The provisions of the act of February 16th, 1867, Pamph. L. 214, in reference to tax-sales of land in Potter, Warren, Bradford and Sullivan counties, to the effect that the oath of the tax collector shall be deemed conclusive that the taxes are unpaid, and that no personal property can be found on the land out of which said taxes can be made, are retrospective only, and do not apply to sales of land for unpaid taxes assessed after its passage.

2. Where the description of land sold at a tax sale, as returned by the assessor, is applicable to either of two lots, it is erroneous to submit the question of identity to the jury without evidence.

3. A lessee who is in "open, notorious, visible and exclusive possession" of land under an unrecorded lease for three years, may hold his term against a subsequent mortgagee, although he has paid no rent at the time the subsequent right was granted.

May 24th 1882.     Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Warren county :* Of January Term 1882, No. 376.

*Trespass quære clausum fregit* by Cassius Nelson, against J. J. Marsh, to recover damages for entering on a certain 30 acre tract of land, claimed by the plaintiff under a lease from the former owner, and cutting and carrying away the grass therefrom.

At the trial, before BROWN, P. J., the following facts appeared : Prior to March 1st 1879, A. H. Nelson, father of the plaintiff, owned and occupied the tract in question, which was located in Warren county and was part of a large farm situated in Crawford and Warren counties.   On that date he executed a lease of the farm to his son for three years, and at the same time sold him all the stock and personal property connected with it. The lease was not recorded.

It was claimed that from this time the plaintiff, who was unmarried, took possession of the farm and managed it, although his father continued to reside with him in the dwelling-house situated thereon, in Crawford county.

In March 1881, that part of the farm located in Crawford county was sold under a lien prior to the lease and to all other encumbrances, and was bought by the defendant, who ousted the plaintiff, and took possession of this portion of the farm himself.   The alleged trespass for which this suit was brought was committed by the entry of the defendant on the Warren county tract, from which he cut and carried away the grass.   There was no evidence to show the payment of rent by the plaintiff to his father.

In his defence, the defendant produced a deed executed by

A. H. Nelson, to him, and duly recorded, dated September 12th 1879, covering the entire farm. This deed was accompanied by a defeasance which was not recorded, and the two instruments were treated by the court as a mortgage. There being a small sum due the defendant on this mortgage, he claimed the right to enter on the Warren county tract as mortgagee, alleging that he had no actual or record notice of the prior lease to the plaintiff.

The defendant further claimed title to this land in controversy by virtue of a deed to him from L. F. Watson and S. W. Waters, who were purchasers of the property at two tax-sales thereof; one in 1872, for the unpaid taxes of 1871 and 1872; and the other in 1874, for the unpaid taxes of 1873. The assessment shown as the basis of these sales, which appeared in the assessor's record, designated the land as follows:

1871, A. H. Nelson, Tract 88, 30 acres.

1872, A. H. Nelson, Tract 88, 30 acres.

1873, A. H. Nelson, Tract 89, 30 acres.

A. H. Nelson did not own 30 acres of land in Tract 88, but did own two 30 acre lots in Tract 89, known as the Northern and Southern, the latter being the lot in question.

The defendant offered to prove by the tax collector for 1871–2–3 and 4 that the owner, A. H. Nelson, recognized the land from the description by which it was assessed and sold, and both promised to pay and actually paid the taxes thereon for the year 1874: this for the purpose of showing Nelson's recognition of the mistake as to the number, and an admission that the land was really his, although erroneously stated as in Tract 88.

Objected to by plaintiff on the ground that said evidence did not tend to show what land was meant by the assessor in making his assessment.

Objection sustained and evidence rejected. (Tenth assignment of error.)

Defendant also offered in evidence the return of the tax collector for these years, which contained a statement by him, under oath, that the taxes were not paid, and that no personal property could be found on the premises out of which they could be collected.

To rebut this the plaintiff offered to prove that there was sufficient personal property on the premises during those years to pay the taxes if sold for that purpose.

Objected to by the defendant on the ground that such evidence was not admissible under the act of February 16th 1867 (P. L. 214). Objection overruled and evidence admitted. Exception.

The provisions of the act referred to are as follows: "That all lands in Potter, Warren, Bradford and Sullivan counties,

which are assessed with any taxes that are returned to the county commissioners upon the oath of the tax collector that the taxes are unpaid, and that no personal property could be found upon said land out of which said taxes could be made, the oath of said tax collector shall be deemed conclusive of that fact, and the county treasurer shall be required to advertise and sell all such lands in the same manner, and under the same regulations, as unseated lands are now sold for taxes."

Sec. 3 repeals all laws conflicting with the above, as to Warren and the other counties named.

The plaintiff requested this court to charge as follows : " If the jury are satisfied from the evidence that there was, upon the land in controversy during the years 1871 and 1873, while the tax duplicates were in the hands of the collector, personal property more than sufficient to pay all the taxes assessed against the land for these years, with the costs, which by reasonable diligence the collector might have seized, the tax sales of 1872 and '74 passed no title." Affirmed.

" There is no sufficient evidence to establish the identity of the tract sold in 1872 as No. 88, or that sold in 1874 as No. 89, with the land in dispute, there being two pieces of land, to either of which the evidence is equally applicable." Answer : " The plaintiff's second point is affirmed so far as the sale of 1872 is concerned, and so far as the sale of 1874 is concerned this point is answered by reference to the general charge."

The general charge referred to was as follows : " So far as that sale (of 1872) is concerned we say to you that there is no evidence in the case, in our judgment, that would justify you in finding that the assessment, as in No. 88, meant the 30 acres in the south-east corner of No. 89 . . . . . . . . If it be conceded that one of the 30 acres that is assessed as in 88 meant one of this 30 acres in 89, there is, we think, no evidence that would show whether it belonged to the southern 30 acres or the northern 30 acres, and the controversy is in regard to the southern 30 acres . . . . . . The assessment of 1874 shows 30 acres in Tract 89. It is a question of fact for you to determine, from the evidence, whether the 30 acres assessed, admittedly by its right number, in 1873, upon which the tax-sale of 1874 was based, is the 30 acres in the southeast corner of Tract 89."

In answer to the defendant's points the court charged substantially that notwithstanding the continued residence of A. H. Nelson on the premises after the lease to his son, if the plaintiff under that lease, took an open, notorious, visible and exclusive possession and dominion of the same, and thus held at the time when the defendant took his mortgage—that the mortgage was taken subject to the rights of the plaintiff under his lease.

[Marsh *v.* Nelson.]

Verdict for the plaintiff for $89.54, and judgment thereon; whereupon the defendant, J. J. Marsh, took this writ, assigning for error the admission and rejection of evidence as above noted, the answers to the points of both plaintiff and defendant, and a part of the general charge as above cited.

*John W. Apple* and *Brown & Stone* (with whom was *Samuel Minor*), for plaintiff in error.—Under the act of February 16th 1867, the return of the collector that there was not sufficient personal property on the premises to pay the taxes was conclusive, and no evidence should have been admitted to contradict it. The act is constitutional, and is a proper exercise of the power of the legislature. Moreover, the act is not confined in its operation to sales upon taxes assessed prior to its passage. The words "are assessed," &c., simply denote a continuing present. The wrong number of the tract does not vitiate the sale. Identity is a question of fact for the jury, and the land may be identified by evidence, aliunde the record: Woodside *v.* Wilson, 32 Pa. St. 52; Miller *v.* Hale, 26 Pa. St. 432; Dunden *v.* Snodgrass, 18 Pa. St. 155. As there was no evidence in the case to show that both 30 acre pieces in Tract 89 are seated land, the case of Hess *v.* Herrington, 23 Sm. 438, relied on by defendant in error, does not apply. Nor did the evidence show such specific acts of transfer and change of possession from A. H. Nelson to his son as would in law affect Marsh with notice. Marsh's right to possession was therefore complete under his mortgage: Martin *v.* Jackson, 27 Pa. St. 504.

*Wetmore* and *Noyes*, for defendant in error.—The provisions of the act of 1867 relate only to lands which "are assessed with taxes which are returned," &c., at the date of its passage. The act, therefore, does not apply in this case. The lots belonging to A. H. Nelson were in the same township and tract, and contained the same number of acres, without any ear-mark in the assessment to show which was intended. The question of identity therefore should not have been submitted to the jury: Hess *v.* Herrington, 73 Pa. St. 438. There was properly no question of notice in this case, since leases for less than 21 years, "where the actual possession and occupation goeth along with the lease," are expressly excepted out of the recording acts, and are not regarded as fraudulent although not recorded: Williams *v.* Downing, 6 Harris 60.

Mr. Justice TRUNKEY delivered the opinion of the court, October 2d 1882.

By the Act of April 29th 1844, P. L. 501, "all real estate

[Marsh *v.* Nelson.]

within this commonwealth on which personal property cannot be found sufficient to pay the taxes assessed thereon, and when the owner or owners thereof neglect or refuse to pay the said taxes, the collectors of the townships in which said lands lie shall return the same to the commissioners of the several counties; and the said lands shall be sold as unseated lands are now sold, in satisfaction of the taxes due by the said owner or owners." But such lands shall not be sold until the owners shall have neglected to pay the said taxes for the space of two years; and the owners shall have the right to redeem them within one year after receiving actual notice, from the treasurer of the county, that they have been sold. No such sale divests the title of the original owner where he shows that there was sufficient personal property on the real estate sold to pay all the taxes assessed thereon, which might have been seized by the collector if he had used due diligence.

The act of February 16th 1867, P. L. 214, provides, 1. "That all lands in Potter, Warren, Bradford and Sullivan counties, which are assessed with any taxes that are returned to the county commissioners, upon the oath of the tax collector that the taxes are unpaid, and that no personal property could be found upon said land out of which said taxes could be made, the oath of said collector shall be deemed conclusive of that fact, and the county treasurer shall be required to advertise and sell all such lands, in the same manner, and under the same regulations, as unseated lands are now sold for taxes." And, 2. "All lands heretofore sold for taxes, at treasurer's sale, which shall remain unredeemed for two years from the date of this act shall be deemed taken and held to have been returned, agreeably to the provisions of the first section of this act." To understand this local statute, it is well to keep in view the general statute. Both sections refer to an existing or past state of things, to lands which are assessed and returned, or heretofore sold, and contain no direction for future returns or sales, except the sale of lands which are returned upon the said oath of the collector. If returned without said oath they are not within the Act of 1867; and prior, the return was not required to be under oath. The direction for sale, though contained in more verbiage, means no more than the Act of 1844, which directs that "the said lands shall be sold as unseated lands are now sold." No provision is made by the Act of 1867 for the redemption of lands sold after its passage; hence, there is no change upon this point. If it was the design to do away with the distinction between seated and unseated lands it is likely that the right of redemption would have been placed upon the same footing.

Being local, and prejudicial to the owners of lands, the Act of 1867 should receive a strict construction. Though it may be

called remedial, it is exceptional, and deprives the citizens of a few counties of rights enjoyed by citizens of other parts of the state. Its words, taken in their usual sense, have no relation to future assessments and returns; they relate only to those already made. It seems akin to legislation which validates acknowledgments of deeds, or defective judicial sales, the object being to vest in the purchasers of all seated lands in said counties, heretofore sold, after the lapse of two years, a valid title, notwithstanding the purchasers under the Act of 1844 would have no title at all. The pith is the provision that the return upon the oath of the collector that no personal property could be found upon the land out of which said taxes could be made, shall be conclusive of that fact; and the sting upon the unwary owner who has had no notice, as prescribed by the Act of 1844, is, that after two years from the date of the act, the title to his land will be vested in another person. As respects sales not made, but which may be made on then existing returns, the owner would be entitled to actual notice from the treasurer, and the danger to his rights would not be so great, although he would have to redeem, because he could not prove the truth against the false return.

No question now arises whether the legislature had power to enact that after two years a bad title should be good, or to legalize future sales upon false returns where, upon the real facts at the date of such returns, the lands were not subject to sale. But the real question is, whether the Act of 1867 is prospective as to assessments and returns. We see nothing in the general statute or the local which calls for departure from the ordinary meaning of the language of the local statute in order to give it a prospective intendment. The words "are assessed" and "are returned" are consistent with the supposition of the law being always speaking, and if there were nothing else to consider would denote a continuing present. But the Act of 1867 must be construed with the Act of 1844. As already noted, this act does not require the collector to make the return upon oath, and consequently the prior act is not supplied as to future returns. Possibly some returns had been made upon oath; but if not, the second section would be quite as effective. The provisions relating to then existing returns and sales are clearly expressed. Only in the attempt to give the act prospective application does it become defective and obscure. We are of opinion that it does not operate to repeal the prior statute, except in those things which are plainly conflicting, and that the court below was right in all rulings resting upon the Act of 1844.

It was admitted that A. H. Nelson owned two pieces of land of thirty acres each in Tract No. 89. If one was unseated, that fact ought to have been stated then; everything in the case

[Leas v. Walls.]

pointed to both as seated; the court so understood; and here it is too late to make the objection for the first time that there is no evidence that both were seated. One of the two lots was sold as part of number 88, to Watson. A mistake in the number will not vitiate the sale if the description otherwise is such that the land can be identified. Evidence aliunde is admissible for the purpose of identification. But when the description is alike applicable to either of two lots, it is error to submit the question of identity to the jury without evidence: Hess v. Herrington, 73 Pa. St. 438. The court rightly charged that there was no evidence to show that the lot sold was the one in controversy. Nor was there error in the ruling upon the offer set out in the tenth assignment. The part rejected was as applicable to one lot as the other.

Upon evidence properly submitted, under the instructions, the jury found that at the time the defendant took the mortgage, the plaintiff held " open, notorious, visible and exclusive possession " of the land which he had taken under the lease. Such possession was sufficient notice, and the mortgage was taken subject to the rights of the lessee. A tenant in actual possession under a valid lease may hold his term against a subsequent purchaser or mortgagee, though he had not paid the rent at the time the subsequent right was granted.

Judgment affirmed.