MANEY v. DENNISON.

Opinion delivered January 12, 1914.

1. ACCRETIONS—DESCRIPTION.—Where lands are formed by accretion and properly known as section 4, township 4 south, range 4 east, according to the extended lines of the government surveys, such a description is sufficient to form the basis of a judgment affecting the same. (Page 574.)

2.  ACCRETIONS—TAXATION—DESCRIPTION.—Lands formed to the main
    shore by accretions become the property of the private owners
    of the abbutting lands, and though unsurveyed are subject to taxa-
    tion, and may be described in any appropriate manner sufficiently
    to give public notice as to what lands are taxed. (Page 575.)

3.  ACCRETIONS—APPORTIONMENT—PRESUMPTION—TAX SALE—BURDEN OF
    PROOF.—Where lands are formed by accretions to the main shore,
    and there is no proof that the lands to which the same are at-
    tached were other than that of private ownership, and the same
    were forfeited for taxes, there is a presumption that the same
    were subject to taxation which attends a deed from the State of
    the same, and a deed from the State Land Commissioner covering
    such lands establishes *prima facie* title in the grantee, and the
    burden is upon a party attacking the tax sale to overcome it.
    (Page 576.)

4.  ADVERSE POSSESSION—BURDEN OF PROOF.—The burden of proof is
    upon the party asserting title by adverse possession. (Page 576.)

5.  LIMITATION OF ACTIONS—BURDEN OF PROOF—DIRECTING VERDICT.—A
    party claiming title by limitation has the burden of proof, and
    where the testimony is not undisputed, it is error to take the
    case from the jury and direct a verdict. (Page 577.)

Appeal from Phillips Circuit Court; *J. M. Jackson,*
Judge; affirmed.

*Fink & Dinning,* for appellant.

1.   There is no adequate description of the land. It
is admitted that the section 4 in question has never been
surveyed or platted by the Government, nor by any one
in its behalf, nor any evidence that it has ever been sur-
veyed at all. The starting point being in the northwest
corner of an unknown section that had no legal existence,
all the measurements and bearings would be ineffectual
to identify any land.

2.   The lands in question are not identified by the
testimony.

3.   The alleged tax title of appellees is void. In
addition to the fact that this section, 4, has never been
surveyed or platted, it is admitted that it has never been
selected as swamp or overflowed land by the State, never
been patented by the Government to the State or to any
person or corporation, and no certificate of entry has
ever been issued for same. It was not subject to taxa-

tion, and appellees and their grantor acquired nothing by the commissioner's deed, not even color of title. 95 Ark. 65; 88 Ark. 37.

4. The evidence shows that the lands in question are not accretions to the east half of section 33, but in fact that they are not accretions at all.

5. As against appellees, appellant is the owner of all that portion of the land lying south of the slough by virtue of his actual, open, adverse and hostile possession thereof since 1901.

*Moore, Vineyard & Satterfield,* for appellees.

1. The fact that section 4 was never surveyed and platted by the Government or the State does not render the lands incapable of description. The description as found in the complaint and amendment thereto, the testimony and the plat introduced in evidence, was sufficient to warrant the verdict and judgment. 70 Ark. 355

2. If the lands are an accretion to those of Neely, one of the sources of appellees' title, they were private property and subject to taxation. 79 Ark. 442.

3. The evidence wholly fails to sustain the claim of title by adverse possession. The burden was on the appellant to establish that claim. 61 Ark. 464; 65 Ark. 422; 79 Ark. 109; 57 Ark. 97; 75 Ark. 415; 76 Ark. 529.

McCulloch, C. J. This is an action instituted by appellees against appellant in the circuit court of Phillips County to recover possession of certain lands lying near the bank of the Mississippi River, and alleged to be accretions to the lands fronting on the river according to the plats of the public survey. The lands in controversy are described by metes and bounds and are alleged to be located within the bounds of section 4, in township 4 south, range 4 east. There was no section of that description on the plats of the original survey, for the reason that at that point the channel of the river cut through township 3 south, range 4 east, at the time the Government survey was made. At that time, as shown by the plats, the Mississippi River at that point ran in a westerly direction, and turned south from section 36,

township 3 south, range 4 east, for a short distance, and thence back north to a point near the southeast corner of section 33 of the same township, thus forming a peninsula, and then ran westerly through the south half of sections 33 and 32. Section 33 was, therefore, a fractional one, and there was no part of section 4 in township 4 south, range 4 east, in existence to be surveyed, but on the peninsula mentioned there was a fraction of section 3.

The testimony in the case shows that the lands in controversy were formed as accretions to sections 33 and 3.

In the year 1900 the lands were put on the tax books as fractional section 4, township 4 south, range 4 east, and, under that description, were forfeited to the State for nonpayment of taxes. They were not redeemed, and after the expiration of the time for redemption, they were certified to the State, and appellees' grantor purchased the same, receiving a deed from the Commissioner of State Lands. Appellees assert title under their deed from the State's grantee and also under a deed executed by the owners of the east half of section 33.

The case was tried before a jury, and the court gave a peremptory instruction in favor of appellees.

The question therefore presented on this appeal is, whether there was a disputed question of fact to be submitted to the jury.

It is insisted, in the first place, that the lands in controversy are not sufficiently described in the complaint to authorize a judgment for recovery for the reason that they are described as a part of section 4, which is not on the Government plats and have never been officially surveyed.

The proof shows, however, that the lands are popularly known as section 4 according to the extended lines of the Government surveys, and we are of the opinion that this is a sufficient description upon which to base a judgment.

For like reasons there could be a valid tax sale of

the lands under that description, provided the same were subject to taxation. *Buckner* v. *Sugg,* 79 Ark. 442.

If the land in controversy was formed to the main shore by accretion, and thus became the property of the private owners of the abutting lands, it was subject to taxation, though unsurveyed, and could be described in any appropriate manner sufficiently to give public notice as to what lands were taxed.

It is further contended that the testimony is conflicting as to whether or not the lands were joined to the main shore by accretion, or whether the formation began out in the channel and grew toward the shore line until the same was joined thereto. Appellant introduced no testimony, but contends that there was a conflict in the testimony of Purvis, a witness introduced by appellees. It is contended that, according to the testimony of this witness, it is left in doubt whether the land was formed by accretion or not, and that this question should have been submitted to the jury.

After a careful consideration of the testimony of Purvis, we find that his testimony is to the effect that the lands were formed by accretion to the main shore and that there is no dispute on this point. Counsel for appellant quote isolated statements of the witness which, standing alone, might tend to raise a doubt as to whether the land was formed by accretion or not, but when his testimony is read together as a whole, it is very clear that there can be no dispute about the effect of it. The witness did not claim to have observed the formation while it was going on, and his statements are in the nature of expert testimony, based upon long experience and observation. He had known the lands for about twenty years and had studied the formations along the Mississippi River for a much longer period. He states his unqualified opinion, from an examination of this land and the appearance of it, including the growth of timber, etc., that it was formed by accretion; and it can not be said that there is any dispute in his testimony. He testified with a map before him and made many references

to the map, which do not appear plain to us for the reason that his indications are not explained in the record. Doubtless the circuit judge understood his statements, and we indulge the presumption, to some extent, that those indications strengthened the view of the circuit judge that there was no contradiction of his testimony.

We can not, therefore, say that the court was in error in taking that question from the jury.

There is, however, some conflict as to what lands these accretions belonged to and the proper apportionment according to the rules announced by this court. *Malone* v. *Mobbs,* 102 Ark. 542; *Reeves* v. *Moore,* 105 Ark. 598. But since the evidence shows that the lands were formed by accretion to the main shore, in the absence of affirmative proof that the lands to which same were attached were other than that of private ownership, then there is a presumption which attends the State's deed that the lands were subject to taxation. The deed of the State Land Commissioner to the grantor of appellees establishes the title *prima facie,* and the burden was on the party attacking the tax sale to overcome it. Kirby's Digest, § 4807; *Scott* v. *Mills,* 49 Ark. 266.

According to the undisputed evidence, the title of appellees was, therefore, established under the tax deed, and the court was correct in making declaration of that fact to the jury.

Discussion of appellee's claim of title under the deed from the owners of section 33 is unnecessary, the title being otherwise established.

Appellant pleaded the statute of limitations, but introduced no proof on that score, relying upon the testimony of witnesses introduced by his adversary.

The burden of proof was on appellant to prove his title by adverse possession. *Brown* v. *Bocquin,* 57 Ark. 97; *Nicklace* v. *Dickerson,* 65 Ark. 422; *Calhoun* v. *Moore,* 79 Ark. 109.

There are many statements in the testimony of witnesses introduced by appellees tending to show that appellant has occupied different portions of the land for

many years, but after reading the testimony of these wit-
nesses carefully, we find that it is impossible to pick out
any particular portion of the land which he has occupied
a sufficient length of time to ripen into title by limita-
tion, and the testimony merely shows an uncertain and
shifting possession, which would not justify a verdict in
appellant's favor under a proper description. The bur-
den rested on appellant to show adverse occupancy of a
definite area, sufficiently described to found a verdict
upon, and, in the absence of such proof, he can not com-
plain that the court refused to submit his plea of title
by limitation to the jury.

　　　Judgment affirmed.

### ON REHEARING.

McCULLOCH, C. J. We disposed of this case on
the theory that all of the land in controversy was
situated within the boundaries of section 4, township
4 south, range 4 east, according to extended boundaries
of the original Government survey. That was a mistake,
and our attention is now called to it. A considerable
portion of the land in controversy is not in section 4,
but lies between that section and Old River, which forms
the south boundary of fractional section 33, township 3
north, range 4 east, as originally surveyed. Appellees
described that in their complaint and alleged that appel-
lant was in possession thereof. The proof tends to show
that most of the clearing is on the part in section 4, but
a part of it extends over the north boundary of section 4.
This changes the aspect of the case so far as relates to
that land outside of the boundaries of section 4, for ap-
pellees have failed to prove title to that land. At least,
the testimony is not undisputed. They claim title under
a deed from Fannie B. Neeley, as executrix, but do not
deraign title from the original source. The allegation
with respect to the Neeley title is merely that the testa-
tor occupied the land a sufficient length of time to give
title by limitation. The answer, too, raises an issue on
that question, and the denials were as broad as the
allegations of the complaint. Therefore, it devolved on

appellees to prove their title, for they must recover, if at all, upon the strength of their own title and not upon the weakness of that of their adversary. Besides the question of proof of ownership of the lands in section 33, the evidence does not show, beyond dispute, that the lands were formed as an accretion to that section. We are of the opinion that the court erred in directing a verdict as to that portion of the land in controversy. The judgment for damages is not separable, and we can not determine from the record before us how much was awarded for detention of the land in section 4 and how much for the other land, some of the clearing being on each tract. Therefore, the error in directing a verdict affects the recovery of damages.

We adhere to our former conclusion that the evidence established, beyond dispute, the title of appellees to the lands described in section 4 and that that was a valid description. The judgment as to that portion of the land is affirmed; but as to the remainder of the lands described in the complaint and as to the award of damages the judgment is reversed and the cause remanded for a new trial. To that extent the petition for rehearing is granted.