**Rubin BRYANT and Andrew Kennedy, Appellants,**

**v.**

**CHICAGO MILL & LUMBER COMPANY, a corporation, and United States Gypsum Company, Appellees.**

**No. 15090.**

United States Court of Appeals Eighth Circuit.

Nov. 12, 1954.

[redacted]

728

R. D. Smith, Jr., Marianna, Ark. (James T. Gooch, Arkadelphia, Ark., and L. A. Hardin, Little Rock, Ark., on brief), for appellants.

W. H. Daggett, Marianna, Ark. (Daggett & Daggett and J. B. Daggett, Marianna, Ark., on brief), for appellee Chicago Mill & Lumber Co.

George K. Cracraft, Jr., Helena, Ark. (George K. Cracraft, Helena, Ark., on brief), for appellee United States Gypsum Co.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from a summary judgment on defendants' motion based on pleadings, exhibits, affidavits and admissions of fact. Plaintiffs' (appellants) petition to quiet title to some 600 acres of land in dispute was dismissed and upon defendants' cross claims title to such land was quieted in defendants. A well considered opinion by Judge Lemley detailing the facts and setting out the applicable Arkansas law is reported in 120 F.Supp. 463. The facts will be summarized. They are set out in more detail in the trial Court's reported opinion.

The fractional W½ of the SE¼ of Section 7 [1], then containing about eleven acres, is shown to be riparian land by Government survey of 1846. This land was sold for 1929 taxes. In 1952 plaintiffs filed an application to purchase this land for $149.80, or on the basis of $3.00 per acre, and pursuant thereto said land was so sold to plaintiffs and tax deed issued to them from the State. The tax records show that the tract in 1929 was taxed as 48 acres.

After the 1846 survey the river gradually receded eastward several miles building up the accretions now in controversy. There was a fact issue as to whether these accretions belonged to plaintiffs' land or certain islands owned by defendants. However, the trial Court assumed, for purposes of its ruling, that the accretions originally belonged to plaintiffs' described land, recognizing that our decisions in Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881, 883; and Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101, hold

---

1. All real estate involved in this case is in Township 14 South, Range 1 West in Chicot County, Arkansas, and that part of the description both as to conveyances and tax matters will be omitted in this opinion.

that disputed factual issues can not be determined in passing on a motion for summary judgment. The defendants claim title under deeds contained in their chain of title filed herein, conveying the SE¼ of Sec. 7 lying East of Island Chute, together with payment of taxes thereon for over fifteen years. The defendant, United States Gypsum Company, by virtue of deed from its co-defendant is entitled to relief if Chicago Mill and Lumber Company has established its claim, and said defendant also asserts an additional and independent claim under chain of title set up by it including several tax deeds. There is no conflict of interest between the defendants as they are in agreement as to their division boundaries.

As to defendants' title the trial Court made the following findings: "As early as 1900, a Mrs. Katie Connerly owned, or at least had color of title to, the Fractional West Half of the Southeast Quarter of Section 7 and to Islands 80 and 81. The defendants deraign her title to the two Islands back to the United States, but they do not set forth a straight record title with respect to the Fractional West Half of the Southeast Quarter of Section 7. Mrs. Connerly's title to the tract just described originated in a deed from C. H. Carlton and wife to Mrs. Eliza D. Pritchard, who in turn conveyed to Mrs. Connerly on December 12, 1898. The deed to Mrs. Connerly also conveyed Islands 80 and 81. The description contained in Mrs. Connerly's deed refers to the stream which, as above mentioned, traverses the area. (Stream referred to as Island Chute) * * * The effect of this deed was to vest color of title in Mrs. Connerly to both of the possible sources of origin of the area in controversy.

"On October 5, 1900, Mrs. Connerly conveyed by warranty deed to William McCoy the following described lands, which include the area in controversy: * * * Fractional SE¼ of 7 lying East of Chute (and other described lands all east of Chute). By a straight chain of mesne conveyances, wherein was employed the same or substantially the same description * * * said lands were conveyed to the defendant, Chicago Mill. & Lumber Company, in 1936. The variations found in the descriptions contained in the various deeds in this chain of title are minor; in one of the deeds the 'chute' is alternatively referred to as 'Boggy Bayou', and the deed from W. R. Satterfield and wife to Mississippi Valley Timber Company (given in 1919 and of record) contains the following recital: 'The Stream designated above as "Island Chute" is sometimes called or designated as Boggy Bayou, and when thus referred to means Island Chute.' "

Thereafter, in 1902, Mrs. Connerly conveyed the W½ of the SE¼ of Section 7 to Charles S. Washington.

The record further shows that prior to December, 1902 the County Court ordered the County Surveyor to make a plat of unsurveyed accretions so that said land could be taxed. That such a survey was made appears by surveyor Horner's deposition in another case made an exhibit here. The survey was made by extending lines of the original survey across unplatted area and the plat was filed and remained in the court house for a time but later could not be located. The County Court, in 1902, made the following order: "On this day it is ordered by the Court that all lands put on the tax books for the year 1902 as per plat made by T. S. Horner, not now upon said tax rolls and outside of the levee, be assessed at One Dollar per acre. And the Clerk of this Court is hereby ordered and directed to extend said taxes on said lands at that rate for the year 1902". That pursuant thereto all involved land east of Chute was separately taxed.

Mississippi River Chart No. 38 dated 1879–1880 shows that accretions that had then formed to plaintiffs' land were traversed north and south by a substantial stream of water. The trial Court found this to be the stream referred to as Island Chute in the deeds and tax records. This stream is no longer active but its location across the area is still readily ascertainable.

All of the involved land is wild and unoccupied land and not in actual possession of any one.

Chicago Mill and Lumber Company and its predecessors have paid taxes on the land it claims east of Chute continuously at least from 1912 to 1951, except for the year 1918, the tax description as to the controversial land being variously described from year to year as all that PT SE¼ east of Chute Section 7, all fractional SE¼ east of Chute Section 7 and all fractional east of Chute Section 7 (plaintiffs own east of Chute NE¼ of 7 and his title to such tract is not questioned). United States Gypsum Company in 1943 to 1946 paid taxes on East fractional ½ of 18 and fractional NW¼ 17, and from 1946 on regularly paid tax on all of Section 17 and all east of levee Section 18.

■ Plaintiffs' first contention is that they own the land in controversy for the reason that under Arkansas law a conveyance of riparian land carries with it title to accretions although accretions are not specifically included. The rule appellants contend for is the general rule but it is subject to exceptions. The applicable Arkansas law is well summarized by Judge Lemley as follows [120 F.Supp. 467]:

"Under Arkansas law these accretions are private property and belong to the riparian owner against whose land they are formed even though they may extend so far from the original bank line as to occupy the geographical area originally occupied by the lands of the opposite riparian owner, which original lands had been destroyed by the River's erosion. As accretions automatically belong to the riparian owner, they pass automatically under a conveyance of the original land unless expressly excluded from the grant. Since accretions are private property they are also subject to taxation; ordinarily, however, payment of taxes on the original land amounts to payment on the accretion, and conversely a forfeiture and sale of the original land for nonpayment of taxes carriers the accretion with it.

"These principles, however, are subject to the important qualification that there can be a severance of the accretion from the original land for tax and other purposes, and that after such a severance takes place, transactions involving the original lands do not affect the accretions.

"While lands in Arkansas are generally and properly described in terms of the Government surveys, it is not absolutely necessary that they be so described. Generally, a description is sufficient if it serves to adequately identify the tract in question and to distinguish it from other tracts. When accretions are first formed, they are, of course, unsurveyed and unplatted; it has been held sufficient in describing such newly formed land for tax purposes to use descriptions representing extensions of the lines of the Government surveys over the body of the accretion, which was not included in the original surveys.

"The foregoing principles have been frequently announced and applied by the Supreme Court of Arkansas, the United States Court of Appeals for the Eighth Circuit, and the United States District Courts sitting in this state. We do not stop now to give a list of the ruling Arkansas cases; excellent discussions of those decisions will be found in the opinions of the Court of Appeals in Chicago Mill & Lumber Co. v. Tully, 8 Cir., 130 F.2d 268; Anderson-Tully Co. v. Murphree, 8 Cir., 153 F.2d 874; and Anderson-Tully Co. v. Chicago Mill & Lumber Co., 8 Cir., 175 F.2d 735. See also, for a discussion of said principles, our opinions in the cases of Banks v. Chicago Mill & Lumber Co., D.C.Ark., 92 F.Supp. 232; and Kimble v. Willey, D.C.Ark., 98 F.Supp. 730."

Sanders v. Plant, 211 Ark. 913, 204 S.W.2d 323, supports the conclusion that when there has been a valid severance a forfeiture of the main land does not carry with it the accretion. In that case the accretions were taxed as accretions in Sec. 20, 60 acres. These accretions had been separately sold for taxes. The Arkansas Court held the tax sale void be-

cause the description included accretions on two separate quarter sections and that there had been a separation of accretions from each quarter section. The writer of the minority opinion contended that, since the survey plat and description were too indefinite to work a severance and the separate sale of the accretions was held void, the accretions should pass with the riparian land. The majority held, however, that the platting and separate taxing of the accretions worked a severance and that consequently the accretions did not pass with the riparian land.

■ It is clear under the Arkansas law that accretions can be severed from the riparian land and if there is such severance the accretions will not pass with the riparian land.

■ The decisive question in this case is whether there has been a severance of the land east of the stream from plaintiffs' description. Defendants claim the severance was effected by Mrs. Connerly's deed in 1900 hereinabove referred to and the subsequent deeds in chain of title using substantially the same description. They do not contend that the separate taxing of the land east of Chute alone worked a severance, but insist such action by the taxing officials is corroborative of the severance. The trial Court made the following finding on this issue: "We are convinced that the effect of Mrs. Connerly's two conveyances above mentioned and of the actions of the taxing officials of Chicot County in having the unplatted accretions surveyed and in extending taxes against them after the survey, was to sever the area in controversy from the original West Fractional Half of the Southeast Quarter of Section 7, if in fact said area was an accretion to the original land just described. As pointed out, Mrs. Connerly in 1900 was the apparent owner of the land on both sides of this stream of water, and in that year she sold the land lying east of the stream to the Chicago Mill & Lumber Company's predecessor in title; two years later she sold the

land lying west of the stream to Charles S. Washington. This she clearly had a right to do, and she had a right to describe said lands by reference to the natural boundary between the tracts, whether that boundary was a 'chute' or a 'bayou' or some other type of stream. That she may have erroneously referred to it as a 'chute' is, to our mind, immaterial. Granting the validity of the plaintiffs' theory that the lands east of this stream were accretions to the mainland shore, we think that Mrs. Connerly, who owned both, sold the accretions east of the stream to one party, and the mainland shore and the accretions west of the stream to another. Hence, subsequent transactions affecting lands to the west of the stream would have no effect upon the accretions east of the stream." The trial Court's finding of a severance is fully supported by the undisputed record if it is right in its conclusion that the reference in the deeds to Chute was a reference to an identifiable natural boundary. The 1846 survey shows an Island Chute extending down into Section 7 but not quite to the south half thereof. None of the accretions now claimed had then been formed. The stream shown on Mississippi River Chart No. 38 passes through Section 7 in substantially the same position as would the extension of the Island Chute on the 1846 survey. Such chart shows each end of the stream at the river. In Paragraph II of answer to cross claim plaintiffs admit East of Chute NE¼ of 7 is a proper description. The case of Chicago Mill & Lumber Co. v. Tully, 8 Cir., 130 F.2d 268, illustrates that it is often an extremely difficult and complicated scientific problem, upon which competent engineers may differ, whether a pre-existing stream was a Chute or a Bayou. In the Tully case it was necessary to determine this issue because if the stream was a Chute the accretions beyond would not be riparian to the mainland. In our present case the technical nature of the stream is unimportant under the present issues. The only problem is whether an identifiable natural boundary has been desig-

nated. Since 1919 the numerous conveyances have contained a recitation in effect that "The stream designated above as Island Chute is sometimes called or designated Boggy Bayou and when thus referred to means Island Chute". At least some of these deeds were of record before the State acquired tax title and all were of record long before plaintiffs obtained their tax deed. Then there are the uncontroverted affidavits of two local abstracters to the general effect "that the lands lying immediately east of the W½ of the SW¼ of Section 7 * * * have been popularly known and assessed for taxes and described in deeds of conveyance as * * * the SE¼ of Section 7 lying east of Chute * * * Since the execution of the above deed, said lands have been conveyed using substantially the same description, which is sufficient to notify the public as to what lands are conveyed". Under the facts in this case it is clear that descriptions can be aided by extrinsic evidence. Buckner v. Sugg, 79 Ark. 442, 96 S.W. 184; Maney v. Dennison, 110 Ark. 571, 163 S.W. 783. In the Buckner case, supra, the Court says [79 Ark. 442, 96 S.W. 186]: "The controlling question in this case, therefore, is whether a description otherwise than by reference to plats of the original public survey or to other recorded plats properly identifying the tracts or lots of land, can be aided by extrinsic evidence of facts which serve to connect the description with the particular tract or lot sought to be charged. The affirmative of this proposition seems to be established by the great weight of authority. Many of the courts have gone further, in support of this view, than we have felt willing to go, but an examination of the following cases will serve to illustrate the established doctrine. Cooper v. Holmes, 71 Md. 20, 17 A. 711; Textor v. Shipley, 86 Md. [424] 440, 38 A. 932; French v. Patterson, 61 Me. 203; Smith v. Messer, 17 N.H. [420] 426; Driggers v. Cassady, 71 Ala. 529; People v. Leet, 23 Cal. 161; Hopkins v. Young, 15 R.I. 48, 22 A. 926; State v. [Inhabitants of] Woodbridge, [Tp.] 42 N.J.L. 401; Stewart v. Colter, 31 Minn. 385, 18 N.W. 98; Godfrey v. Valentine, 45 Minn. 502, 48 N.W. 325; Marsh v. Nelson, 101 Pa. 51." The fact that the land east of Chute was separately taxed and that the Chute description was uniformly used in tax proceedings to describe land in the involved area strongly corroborates the adequacy of the description.

The trial Court's conclusion that the Connerly deeds severed the lands in controversy from plaintiffs' riparian land is fully supported by the record and by the Arkansas law.

A party in a quiet title action can recover only on the strength of his own title and he will gain nothing in proving a defect in the title of his adversary. Anderson-Tully Co. v. Murphree, 8 Cir., 153 F.2d 874. The plaintiffs' tax deed has been attacked in the pleadings as being void for numerous assigned reasons. There is evidence to support such contentions. However, it is doubtful whether a sufficiently conclusive showing has been made as to this to warrant a finding as a matter of law. The trial Court indicated that there was merit in defendants' claim that the tax deed is void, but it found it unnecessary to pass on this question. We, likewise, feel under the record in this case that this question should not be adjudicated on the motion for summary judgment, and we assume, but do not adjudicate, that the plaintiffs' tax deed gives him sufficient title to maintain this action.

Defendants clearly have color of title. They trace their title back to 1898. There are a considerable number of conveyances since then apparently regular on their face. In 2 C.J.S., Adverse Possession, § 62, page 581, it is said: "Broadly considered, an instrument is available as color of title supporting adverse possession where it purports to pass to claimant a title, legal or equitable, to the land in controversy." Plaintiffs cite Bailey v. Jarvis, 212 Ark. 675, 208 S.W.2d 13, holding that color of title is a fiction and as such can only be used

to accomplish just results and that where both grantor and grantee knew that grantor owned no interest, the color of title fiction would not be applied as a shield and protection against fabrication. The facts in the Jarvis case are clearly distinguishable from the facts in this case and the rule therein announced is not here applicable. In this case there is no allegation of fraud in the pleadings, nor is there any proof of fabrication or lack of good faith. Moreover, apparent title to plaintiffs' land and the land in controversy was in a common source, Mrs. Connerly, in 1900, and since then the land now claimed by defendants has passed to them by an unbroken line of conveyances. When plaintiffs purchased the tax title in 1952 they paid for less than 50 acres at the offered price of $3.00 per acre. They knew their description was taxed at 48 acres and had at least constructive knowledge that there were numerous conveyances of record to that part of their description east of Island Chute which was also described in a number of conveyances as being the same as Boggy Bayou, and also knew, or had constructive knowledge, that the land east of the stream was taxed separately to others.

■■■■ Further, by payment of taxes for over fifteen years by the defendant, Chicago Mill and Lumber Company, said defendant had color of title as a matter of law by virtue of 37-102, 37-103 of the Arkansas statutes. Speaking of the effect of these statutes the trial Court said: "Section 37-102 provides that payment of taxes on wild, unimproved, and unenclosed land for seven consecutive years under color of title shall be considered as actual possession thereof for such period; and Section 37-103 provides that payment of taxes on such lands 'for a period of fifteen (15) consecutive years * * * shall create a presumption of law that (the taxpayer), he, or his predecessor in title, held color of title to said land prior to the first payment of taxes made as aforesaid, and that all such payments were made under color of title.' These statutes are more than statutes of repose; when their terms have been met, as we think they have been here, they operate affirmatively to vest title in the taxpayer. Paragould Abstract & Real Estate Co. v. Coffman, 100 Ark. 582, 140 S.W. 730, L.R.A.1915B, 1006; McFarlane v. Morgan, 157 Ark. 97, 248 S.W. 257. In Koonce v. Woods, 211 Ark. 440, 201 S.W.2d 748, the Court, speaking of these statutes, said: ' * * By Act 66 of 1899, * * * payment of taxes on unimproved and unenclosed land under color of title for a period of seven consecutive years constitutes an investiture of title. Towson v. Denson, 74 Ark. 302, 86 S.W. 661, * * *. By subsequent legislation (Act 199 of 1929, * * *) one who pays taxes on wild and unimproved land for a period of 15 years has color of title as a presumption of law. These statutes, of course, are not limitation measures. They establish, in the one case, an investiture of title, and in the other there attaches color of title as a legal presumption.' " 211 Ark. at pages 447–448, 201 S.W.2d at page 752. It seems clear that the defendants had at least color of title to the lands that they are claiming.

■■■■ In Buder v. Becker, 8 Cir., 185 F.2d 311, 315 this Court said: "In Russell v. Turner, 8 Cir., 148 F.2d 562, 564, this Court said that, upon a doubtful question of local law, it would not adopt a view contrary to that of the trial judge, unless convinced of error, and that 'All that this court reasonably can be expected to do in reviewing cases governed by state law is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law.' " There is nothing in the law, as set out in the trial Court's opinion which would lead us to believe that the Court misconceived or misapplied the applicable Arkansas law. We have fully considered the errors relied upon by the appellants for a reversal and the arguments and authorities cited in support of such contentions. We are convinced that the trial Court correctly decided this case under the Arkansas law and, accordingly, the judgment of the District Court is affirmed.