**Simon ZUNAMON, Plaintiff,**

v.

**W. G. BROWN, J. P. Brown, Sr., and J. E. (Doc) Brown, Defendants.**

**No. PB 66 C–34.**

United States District Court
E. D. Arkansas,
Pine Bluff Division.

July 25, 1968.

W. H. Daggett, Daggett & Daggett, Marianna, Ark., for plaintiff.

Carneal Warfield, Lake Village, Ark., Carl Langston, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

In this diversity action plaintiff seeks to establish title to certain lands in Chicot County, Arkansas, and to have the title quieted as against all claims of the defendants and damages against the defendants pursuant to Arkansas Statute 50–105 for treble the value of timber cut by defendants from the involved lands in the sum of $12,488.79, together with an additional sum of $3,700.00 as damage to the lands, or a total sum of $16,188.-79.

The plaintiff, Simon Zunamon, is a citizen and resident of Chicago, Illinois. The defendants are citizens and residents of Chicot County, Arkansas. Since this action was commenced by the plaintiff against defendant W. G. Brown the property involved was conveyed by W. G. Brown to J. P. Brown, Sr., and J. E. (Doc) Brown by warranty deed duly recorded. Defendants J. P. Brown, Sr., and J. E. (Doc) Brown have entered their appearance and have adopted the pleadings and briefs filed on behalf of the defendant W. G. Brown.

The amount in controversy having been determined to exceed the sum of $10,000.00, exclusive of interest and costs, jurisdiction of the court is established. 28 U.S.C.A. § 1332.

The plaintiff claims to be the immediate successor in title to Chicago Mill and Lumber Company to certain lands lying east of Chute, Northeast Quarter of Section 7, Township 14 South, Range 1 West. The lands involved in this litigation consists of 37 acres.

The defendant, W. G. Brown, claims to be the owner of the riparian lands in Section Seven (7), Township Fourteen (14) South, Range One (1) West, on the right descending bank of the Mississippi River in Chicot County, Arkansas. Each party claims title to the lands by unbroken chains of title, tax payments over a long period of time and possession.

Prior to August 27, 1965, the defendant, W. G. Brown (also known as Gordon Brown), entered into possession of the land in Section 7, lying east of Boggy Bayou, comprising 37 acres, and fenced same. On August 27 plaintiff's attorney addressed a letter to the defendant warning him against trespassing and advising that penalties under the Arkansas Statutes would be invoked in the event of future trespass.

The defendant ignored the warning and proceeded to cut and sell the timber thereon and cleared the 37 acres for farming. Plaintiff immediately filed this suit for trespass, damages and to quiet its title.

Defendant filed an answer and claimed ownership of the 37 acres contending that the area in controversy was "West of Chute" in Section 7.

From government survey shown in the General Land Office Plats there are two Islands, No. 80 and No. 81, formed from the Mississippi River immediately off shore from the right descending bank which includes Section 7. The chains of title referred to by both parties include a reference to "chute". The plaintiff claims the identification of "chute" has long been established as "Sluice or Island Chute", and sometimes referred to as "Boggy Bayou", which runs in a north and south direction close to the riparian shore and West of Island 80. The defendant claims that the "chute" referred to in the chain of title and tax assessments was the chute between the two Islands, 80 and 81, running in a southwest and northeast direction. Therefore, the title issue in the case is the identity of the "chute" running through the Northeast Quarter of Section 7, Township 14 South, Range 1 West.

It is established and agreed that the 37 acres involved in this litigation is the southernmost tip of Island 80, described as Frl. NE ¼ of Section 7, Township 14 South, Range 1 West, East of Island Chute. Island Chute and Boggy Bayou

are known and identified as one and the same applicable to this controversy.

From the pleadings in the case, ora tenus testimony, enumerable exhibits, including chains of title, assessment and payment of taxes on the lands since 1912, and briefs filed on behalf of the parties, the Court finds, as follows:

## FINDINGS OF FACT

1. The 37 acres in controversy is the southern tip of Island 80 as originally surveyed and is also properly described as Frl. NE ¼ Sec. 7, T14S, R1W, East of Island Chute.

2. There is an unbroken chain of title of the Fractional East of Chute NE ¼ of Section 7 commencing with 30.19 acres, Township 14 South, Range 1 West, from the issuance of patent by the United States in 1835 through mesne conveyances vesting title of land in Katie K. Connerly.

3. By warranty deed dated October 5, 1900, Katie K. Connerly conveyed to William McCoy all of the East part NE ¼ Section 7 lying East of Island Chute, etc. (it being the intention to grant, bargain, sell and convey to William McCoy all of Islands 80 and 81 and accretions thereto south of township line between Townships 13 and 14).

4. There is an unbroken chain of title by mesne conveyances to all the Northeast Quarter of Section 7 lying east of Island Chute together with other lands to Chicago Mill and Lumber Company on May 1, 1926. In the various deeds above described, the "Chute" is alternatively referred to as "Boggy Bayou"; particularly the deed from W. R. Satterfield and wife to Mississippi Valley Timber Company contains the following recital, "The stream designated above as 'Island Chute' is sometimes called or designated as Boggy Bayou, and when thus referred to means Island Chute".

5. This identical title was litigated in the case of Bryant v. Chicago Mill and Lumber Company, opinion by Judge Lemley reported in 120 F.Supp. 463 and affirmed by Judge Van Oosterhout speaking for the Eighth Circuit Court of Appeals, reported in 216 F.2d 727 and the judgment and opinions definitely fix Boggy Bayou "as shown on Mississippi River Chart 38 dated 1879–80" the westernmost chute in the area as being the Island Chute referred to in the deeds and tax records.

6. The Chicago Mill and Lumber Company conveyed Fractional All East of Chute and accretions of Section 7 with other lands to the plaintiff, Simon Zunamon, on June 29, 1965, but the Chicago Mill and Lumber Company manages, operates and controls all the property of plaintiff in Arkansas.

7. By affidavit, August, 1953, J. B. Gillison, an attorney and abstracter of Chicot County, Arkansas, certified that the records of Chicot County, revealed that since the execution of the deed from Katie Connerly to William McCoy, October 5, 1900, all instruments affecting the title to the area have used the same description which is sufficient to notify the public as to what lands are conveyed and that the area has been popularly known and assessed for taxes as "All that Part of the Northeast Quarter of Section 7, East of Island Chute, etc."

8. By affidavit August, 1953, Carneal Warfield, an attorney and abstracter at Lake Village, Arkansas, certified that he was familiar with the area involved and knew that since the deed from Katie K. Connerly to William McCoy, October 5, 1900, the lands involved "All of the East Part of the Northeast Quarter of Section 7 lying East of Island Chute, etc." ; that the lands lying immediately east of the West Half of the Southeast Quarter of Section 7, etc., have been popularly known and assessed for taxes and described in Deeds of conveyances as "All that Part of the Northeast Quarter of Section 7, East of Island Chute, etc."

9. By affidavit August 31, 1953, Hal B. Moore, an employee of Chicago Mill stated that he made a survey of the area and that the entire area at the time was wild and unoccupied and not in the ac-

tual possession of anyone. He was referring to the area in controversy at that time, which was considered accretions to certain riparian lands. He further stated that by extending the north and south lines of Section 7 and the south line of Section 18 east, such lines would embrace the area in controversy (which would include the property here involved) and would be properly described according to the survey as "East of Chute Section 7, etc." He further stated the remains of streams of water on M.R.C. Chart No. 38, 1879–80, as Boggy Bayou, and all M.R.C. Chart No. 38, 1913–1915 as Boggy Bayou is plainly discernible on the ground today.

10. T. E. Vowell, Jr., made a survey on the ground and delineated the center line of Boggy Bayou on a plat exhibited to his testimony which the Court finds to be the dividing line between the properties of plaintiff and defendants. Said line is as follows:

Starting at a point common to Section corners of Sections 5 and 6, Township Fourteen (14) South, Range One (1) West; thence 7 chains West to Point A; thence meander over center line of Boggy Bayou:

Point A to Point B – South 24 degrees East 5.75 chains;

Point B to Point C – South 25 degrees 20 minutes West 12.75 chains;

Point C to Point D – South 17 degrees 40 minutes West 13 chains;

Point D to Point E – South 22 degrees West 14.75 chains;

Point E to Point F – South 6 degrees West 46.50 chains;

Point F to Point G – South 15 degrees 15 minutes West 13.40 chains;

Point G to Point H – South 2 degrees East 16.50 chains;

Point H to Point I – South 4 degrees West 12.50 chains;

Point I to Point J – South 19 degrees 30 minutes West 11.00 chains;

Point J to Point K – South 26 degrees 45 minutes West 15.50 chains;

Point K to Point L – South 48 degrees 30 minutes West 4.70 chains;

Point L to Point M – South 12 degrees West 1.50 chains to point on Dixon & White Survey, which line intersects the south section line of Section Seven (7), Township Fourteen (14) South, Range One (1) West.

11. Plaintiff submitted exhibit showing payment of taxes on involved property and in the area beginning in 1912. Beginning in 1927 Chicago Mill paid taxes on property East of Chute Frl. NE ¼, 30 acres. It also shows Lacy paid taxes on Part NE ¼ East of Chute 90.50 acres. In 1937 it shows taxes paid by Auvergne Williams Part NE ¼ East of Chute 90.50 acres; Chicago Mill All East of Chute Section 7, 120 acres. In 1944 Chicago Mill paid taxes on all Frl. East of Chute Section 7, 217 acres. In 1950 W. G. Brown paid taxes on Pt. NE ¼ East of Chute, Section 7, 90.50 acres (same land from Auvergne Williams). Chicago Mill paid Frl. All East of Chute and accretions, except levee, Section 7, 217 acres.

There is also submitted tax receipts showing from 1952 to and including 1966 that Chicago Mill paid taxes on Frl. All East of Chute and accretions, except levee, Section 7, 248 acres. In the Plaintiff's Exhibit 7 it shows that East of Island Chute (Boggy Bayou) in Section 7 there is 248 acres, including the 37 acres involved. Defendant claims

title under a deed from Auvergne Williams and also a state tax deed to Pt. NE ¼ East of Chute Section 7, 90.50 acres, but it was shown that the forfeiture on which the State's tax title was based showed the land as having been assessed in the name of Auvergne Williams. Plaintiff introduced in evidence a decree of the Chicot County Circuit Court in the case of Southeast Arkansas Levee District v. Chicago Mill and Lumber Co., Auvergne Williams, et al., in 1943, the Court specifically finding that Williams had no title and that the title of Chicago Mill and Lumber Company was good. The land condemned was an easement over Tract No. 101–X (Dewey) as shown on Plaintiff's Exhibit 15 and is a narrow strip of land running directly through the area in controversy.

12. Defendant's deed from Gibbs warranted title only to lands "lying west of sluice or chute" although the deed purports to convey "All of Sec. 7, T 14 S., R 1 W" and other lands.

13. On October 13, 1949, shortly after Brown purchased his riparian lands, the Chicago Mill and Lumber Company wrote a letter granting Brown grazing privileges and authority to post and keep posted "our property known as Islands 80 and 81 in Chicot County". It gave Brown authority to protect the property and take actions against trespasses and furnished signs for this purpose. In 1952 the company advised Brown that it was discontinuing its practice of grazing and notified him to remove all cattle and other livestock grazing on their lands. Mr. Brown also admitted he had knowledge that Chicago Mill and Lumber Company had cut timber on this thirty-seven acre tract but made no protest.

By communication June 13, 1958, Chicago Mill advised Gordon Brown of the decision to lease "our Islands 80 and 81 Tract" to a hunting club permitting the fencing to control grazing. Brown was advised that it would go to the Tom Steele Hunting Club of Scott, Arkansas. Chicago Mill cancelled the arrangement with Brown for posting and policing the lands under the prior arrangement of October 13, 1949. The testimony showed that Brown became a member of the hunting club.

14. On August 27, 1965, plaintiff's attorney wrote defendant advising him of plaintiff's title and warning him against trespass, cutting of timber thereon or clearing same and asked that he have his attorney confer with him. Mr. Warfield, his attorney, replied on August 31st, asking for time but Brown ignored the warning and proceeded to cut the timber as reflected by J. H. Hamlen & Sons, Inc., log scale sheets dated September 7th. Mr. Warfield did not even have the opportunity to set forth Brown's claim until September 10th at which time the timber was cut. Therefore, Brown's actions were taken deliberately and wilfully and he proceeded with full knowledge of the consequences should he fail to sustain his contentions.

15. Defendant's Exhibit 15 shows that 69,616 feet of timber was cut from this 37 acres at the market value of $25.00 per thousand board feet or $1,-740.40. No question was raised by the defendant as to plaintiff's statement of the cost of replanting the area in timber at $100.00 per acre. Therefore, plaintiff is entitled to treble damages under Arkansas Statute 50–105 of three times $1,740.40 or $5221.20 plus $3,700.-00 or a total of $8,921.20.

## CONCLUSIONS OF LAW

1. This is a civil action under the rules which include questions at law and equity. Rules 1 and 2 Federal Rules of Civil Procedure.

2. The Court has jurisdiction. 28 U.S.C.A. § 1332.

3. The law of Arkansas is applicable. Bryant v. Chicago Mill & Lumber Co., D.C., 120 F.Supp. 463; aff'd 8 Cir., 216 F.2d 727.

4. That plaintiff's title to lands lying East of Boggy Bayou as defined in Finding of Fact No. 10 in Section Seven, Township 14 South, Range 1 West,

be and is hereby quieted in plaintiff. Bryant v. Chicago Mill & Lumber Co., supra.

5. The Arkansas Statute Anno. (1947) 50–105 providing treble damages is applicable, the trespass of defendant being wilful and deliberate.

6. The defendant by his actions is estopped to question plaintiff's title. Bryant v. Chicago Mill & Lumber Co., supra.

DATED: July 25, 1968.