ASHLEY KNIGHT *v.* E. C. HARDIN, JR. AND HARRY D. FRATESI

5-5431                                                    463 S. W. 2d 673

Opinion delivered February 15, 1971

[Rehearing denied March 22, 1971.]

*George Howard, Jr.,* for appellant.

*Odell C. Carter,* for appellees.

CARLETON HARRIS, Chief Justice. The question in this litigation is whether Ashley Knight, the appellant, established adverse possession of certain lands involved herein. Appellees, E. C. Hardin, Jr. and Harry D. Fratesi, instituted suit in Lincoln County Chancery Court, wherein they sought to restrain appellant from making use of a strip of land fifty feet wide at the north end, thirty-one feet wide midway, and fifty-seven feet wide at the south end, and measuring one thousand sixty-one feet in length. The aforementioned strip includes a road, some twenty feet wide, located along its western edge running from the north end some seven hundred feet southward where it ends in a circle at appellant's house. The disputed area lies west of and is adjacent to the west boundary line of a forty acre tract of land owned by appellant. Following the filing of an answer in which the appellant denied the allegations and further asserted adverse possession of the disputed premises, the cause proceeded to trial. After the taking of testimony, the court found that appellant had failed to prove that he was entitled to any of appellee Fratesi's[1] land by adverse possession, and that appellant owned no land west of the true boundary line as established by the survey of Porter Coates, a witness for appellees, which line is conceded by the appellant to be the true boundary line. The court further relocated the road, placing its center line on the true boundary with ten feet on the property of each party, said road to end at the appellant's house. Appellant was permanently restrained and enjoined from going upon the property except in using the road "as herein relocated". From the decree so entered, Knight brings this appeal. For reversal, it is first asserted that the holding of the chancellor is contrary to the weight of the evidence, and it is next argued

---

[1]Fratesi purchased the land from Hardin in February, 1970, Hardin conveying by warranty deed.

that the court erred in considering incompetent evidence to sustain its findings and conclusion that appellant had not established adverse possession.

E. C. Hardin, Jr. and Ashley Knight were adjoining land owners, Hardin having purchased his land in 1945, and Knight having inherited his land from his father who, according to the evidence, acquired it in 1916. Through the years a dirt road has run between the properties for a distance of seven hundred feet. This road, according to the testimony, started out as a turn-row as far back as 1921, and, beyond dispute, the road has existed since that time; in fact, in his oral opinion, the chancellor specifically found that usage of the road as such by the public had established the right of prescription.

Appellant contends that he has established title entirely up to the east boundary of the road, and that this ownership continues as an imaginary line for a distance of three hundred sixty-one feet farther south (in effect, east of where the road would have been had it continued); the argument is based on his contention that he has farmed and claimed the aforesaid land for a period of more than seven years. Before purchasing the land from Hardin by warranty deed in February, 1970, Fratesi had a survey made by Porter Coates establishing the true line between the properties. Knight did not agree that the survey made by Coates was correct and employed his own surveyor, Gordon Thurman, to survey the property involved in this litigation. Thurman subsequently testified that the Coates survey was accurate, and there is no present contention but that the finding of a true line by Coates (and Thurman) was correct. Thurman also testified, that although he was not familiar with the premises prior to making a survey, there was no doubt in his mind that the road had been in its present location for a number of years. The witness testified that a 1964 aerial photograph offered by appellant (Defendant's Exhibit 4) depicted the road as being in the same location as on the date of the survey made by Thurman, March 27, 1970. He stated that he could observe that Knight had worked the land just east of the road. The witness was then shown Defendant's Exhibit 5

which was also an aerial photograph of the land taken on November 3, 1955. Thurman testified that the location of the road on that photograph appeared to be the same as the location at the time of his survey. The witness stated that, in testifying relative to the location of the road, he was not considering quarter section lines which had been drawn on the map in red. Several elderly residents of the community testified on behalf of appellant that the road had been in the same exact location for a long number of years, several stating that it had been there for at least as long as 25 years. Some of these witnesses also testified that Knight had worked the land south of the road down to the bayou. On behalf of appellees, one witness testified that the turnrow had definitely changed its course during the last three years, and within the last year had moved west for twenty feet. Hardin testified that he had talked with Knight about the location of the line and that the latter had replied that he didn't know exactly where the line was but he knew that he was a little bit over on Hardin. Knight denied this conversation.

As far as the number of witnesses is concerned, appellant would appear to have the weight of the testimony on his side, but despite this testimony, photographs offered in evidence clearly show that the road has *not* remained in the same location, but has moved westward. By taking a transparent sheet of plastic and placing it over appellant's exhibit 5 (this photograph being taken on November 3, 1955) and tracing landmarks which appear in both maps (two buildings[1a] and road corners), and then overlaying the plastic on appellant's exhibit 4 (this photograph being taken on February 14, 1964), since the overlay matches perfectly at the fixed points, except for the road, it can readily be seen that such road, as shown on the last map, is farther west than the road shown on the 1955 photograph (this comparison being made without any reference to the section or quarter section lines on the maps). In other words, during the eight year period of time between the taking of the photographs, the road has moved further

[1a] The home of appellant was not one of the permanent landmarks used for comparison since the record indicates that it was destroyed by fire and later relocated. The buildings referred to are located more than one half mile from the land claimed by Knight.

onto the property presently owned by Fratesi. It cannot be determined just how far this movement has extended, nor can it be more definitely determined when it took place. The maps referred to were offered by appellant, and since Mr. Thurman, appellant's surveyor, apparently testified by simply looking at the maps from the witness stand, it is easy to understand his error.

In his testimony, when asked what he was claiming, appellant consistently answered that he was claiming "out to the road" and "all the way back". This was the only location that Knight would designate, never mentioning any *fixed* point that he was claiming to, and while it is possible that there was a period of time when he could have been in a position to establish ownership of a portion of the Hardin land by adverse possession, no effort was made to do that. Since a comparison of the aerial photographs made in 1955 and 1964 shows that the road has moved, contrary to evidence presented by appellant, this would constitute a basis for the chancellor to believe appellees' testimony that the road has even moved during the last year. Be that as it may, since it definitely appears from the overlay that the road did not remain in the same location from 1955 to 1964, and since seven years had not elapsed from 1964 until the trial of this case, appellant's claim of adverse possession cannot prevail.[2]

With reference to appellant's second point, the court apparently made a comparison of the maps similar to that we have made, though without an overlay, but in expressing his conclusions, reference was made to the quarter section lines which the parties admit cannot be relied upon. Although mentioning the lines in stating his conclusions, the court did note that they were not necessarily accurate. At any rate, we have said that a chancellor's decision will be affirmed if the record supports him as a whole even though he may have given

---

[2]We have held that the burden rests on an appellant to show adverse occupancy of a definite area, sufficiently described to support a verdict and where the proof merely shows an uncertain and shifting possession, it being impossible to pick out a particular portion of land which was occupied for a sufficient length of time, the plea of adverse possession must fail, *Maney* v. *Dennison*, 110 Ark. 571, 163 S. W. 783.

the wrong reason for a decision. *Morgan* v. *Downs,* 245 Ark. 328, 432 S. W. 2d 454.

Of course, the testimony of the witnesses on each side was in irreconcilable conflict, but we think appellees' testimony, together with the exhibits mentioned, supports the finding of the chancellor.

Affirmed.