# CHARLESTON.

## STATE v. KING *et al.*

Submitted October 8, 1915.   Decided October 26, 1915.

1. ADVERSE POSSESSION—*Statute of Limitations*—*"Color of Title."*
   The doctrine of "color of title" is not literally a part of the statute of limitations. It is really a judicial addition to its terms by construction, in obedience to its spirit and purpose, or an implied legislative adoption of a judicial fiction devised for beneficent purposes.  (p. 41).

77 W. Va.

2. SAME—*Color of Title.*

Being a mere judicial fiction used in the administration of the statute in order to effectuate its full, fair and just purpose, the doctrine imposes no duty upon the courts to permit it to be used for the achievement of unjust or fraudulent results. (p. 41).

3. SAME—*Color of Title—Judicial Fiction.*

Courts never set up a fiction to work an injury to any person, nor allow one so to operate. ((p. 41).

4. SAME—*Color of Title—Deed to Trustee.—Fraud.*

A deed made by a person to a trustee for himself, or to himself by another, at his solicitation and without consideration, for land he does not own nor occupy and in which he has no interest, or for such land in addition to his actual possession, with specific intent and purpose to use the same as color of title, cannot be so used by him. His fraud denies it the virtue, force and effect of color of title in his hands. (p. 41).

5. SAME—*"Color of Title"—Construction of Statute.*

The phrase, "color of title," is used in sec. 3 of Art. XIII of the Constitution of this state and sec. 40 of ch. 31, Code, ser. sec. 1099, in the sense in which it is used in the judicial administration of the statute of limitations and other judicial proceedings. (p. 41).

Appeal from Circuit Court, Marion County.

Suit by the State against Henry C. King and others. From the decree Henry C. King appeals.

*Reversed and remanded.*

*Maynard F. Stiles,* for appellant.

*E. T. England, John W. Mason, Jr.,* and *Campbell, Brown & Davis,* for the State.

POFFENBARGER, JUDGE:

While the well known suit of the State against Henry C. King, for sale of the lands embraced in the Robert Morris grants, as having been forfeited for non-entry for taxation, was pending, one Bruce McDonald on the 10th day of April, 1906, executed a deed to J. D. Lowry, trustee, for a tract of land, containing about 200 acres lying within one of the Morris grants, some portions of which had previously been cleared and occupied by "squatters," none of whom claimed ownership of it. McDonald had never occupied it and held no paper title thereto, either good or bad. Its location within

the boundaries of one of the Morris grants is admitted. It may lie within the lines of another grant made to George Keith Taylor. At the date of the execution of the deed, the title was in the State, subject to a right of redemption by King, unless some other person held a better right under the Taylor grant. Lowry himself admits the deed was made for the express purpose of acquiring the State's title, by possession and payment of taxes under it. On the 9th day of Dec. 1912, he filed his petition in the cause of the State against King, exhibiting the deed, alleging such possession and payment of taxes and praying dismissal of the tract from the suit and dismissal of King's petition to redeem, in so far as it pertains to this tract. By a decree entered on the 3rd day of June, 1913, the circuit court on proof of the facts alleged in Lowry's petition, granted the relief therein prayed for, and King has appealed.

The beneficiaries of the trust referred to in the deed are not disclosed by its terms, but the petitioner admits, in his testimony, that they are Bruce McDonald, Bilton McDonald and Millard McDonald. Manifestly, the purpose of the deed was a technical compliance with the letter of the transfer provisions of sec. 3 of Art. 13 of the Constitution and sec. 40, ch. 31, Code, ser. sec. 1099. The argument of counsel in support of the decree proceeds upon the theory of the sufficiency of a mere literal compliance with the terms of the constitutional and statutory provisions, which are alike in all respects. Each requires only actual and continuous possession, under color or claim of title, for specified periods, and payment of taxes for any period of five years during such possession, or after a certain date. The provisions do not define these terms "color or claim of title," and, on this omission and the implied invitation of strangers to take possession of forfeited land and pay the taxes thereon, is based the theory of right under which the deed was executed, possession taken, taxes paid and the petition filed.

The well known distinction between possession under claim of title and possession under color of title need not be noticed. Only the latter is involved here and the only inquiry is whether the petitioner, under the true interpretation of these terms, has been in possession under color of title. Though the

provision does not specifically require the element of *bona fides* in the claimant or person to whom the title inures by possession and payment of taxes, it has been said his position is that of one who relies upon the doctrine of adverse possession and that he may be a claimant in good faith, however defective his color of title may be, so long as his claim is not predicated upon a fraud or breach of trust, and, further, that a *bona fide* claimant, having right to prevent forfeiture by payment of taxes, within the meaning of the Virginia Statutes operative here, before division of the state, and of the Constitution, need have nothing more than an honest belief in the verity of his claim, founded upon reasonable grounds therefor. *State* v. *Lumber Co.*, 64 W. Va. 673, 694.

In the law of adverse possession, the requirement of good faith does not relate to the act of entry or occupation. Occupancy may take place with express purpose and intent to sieze and hold the land against persons known to have superior and even unquestionable title. This may be done by one whose paper title is utterly worthless, because it is a junior patent or has incurable infirmities and defects. One of the requirements of such occupation is that it be hostile to all other claimants and in violation of such rights as they have. No other sort of an entry or occupancy is within the protection of the law of adverse possession. If a man believing himself to have some right or title in land, enters upon it as the tenant of another claimant, his holding is not adverse, but subordinate, to the right of such other person. He must claim the land as his own. He may purchase a defective or void title, with intent and purpose to occupy and hold the land under it, and thus ultimately acquire perfect title. The question presented here is, however, an entirely different one, namely, whether, for the purpose of seizing and occupying land which does not belong to him, he may fraudulently start a paper title, as by the forgery of a paper or corrupt procurement of the execution of one by a person who he knows has no title to the land. Possession obtained by fraud is protected by the statute, in many instances, but will the courts permit a fiction of their own creation, the doctrine of color, to be used as an instrument for the accomplishment of actual fraud?

Color of title is not, in law, title at all. It is a void paper, having the semblance of a muniment of title, to which for certain purposes, the law attributes certain qualities of title. Its chief office or purpose is to define the limits of the claim under it. Nevertheless, it must purport to pass title. In form, it must be a deed, a will or some other paper or instrument by which title usually and ordinarily passes. Such qualities as are imputed to it by the law, for limited purposes, are purely fictitious and are accorded to it only to work out just results. Fictions are never used in procedure or law for any other purpose. *State* v. *Lumber Co.*, 64 W. Va. 672, 679; *Gibson* v. *Shoco,* 13 Wallace 92; *Hoffman* v. *Durham,* 165 U. S. 144; Bouv. Law Dic. Title Fiction. In the light of the character and function of.this doctrine, a deed made by a man to himself could not well be supposed to have the characteristics of color of title. It would not purport to pass title, for, by such a deed a person could not, in the nature of things, pass title out of himself and back into himself again. Besides, the paper is such, in character and purpose, as is seldom or never found in ordinary transactions. Nor would a deed forged or otherwise fabricated by a man, for his own purpose, fall within the spirit of this doctrine, the real design and purpose of which is the protection of persons who have honestly entered into possession of land and held it for the statutory period, under apparent paper title. · It was devised to answer the requirements of the innumerable cases of entries upon and occupations of land, under defective conveyances by men who have paid money for them and devoted their time, labor and means to the improvement of land, and the eviction of whom, under such circumstances, would be unjust, inequitable and ruinous. Prevention of such results is within the public policy of the state, evidenced by the statutes of repose. Keeping in mind this general purpose and the class of instruments to which it ordinarily applies, the doctrine fairly and conclusively assumes that there has been a transaction between two or more persons by which, a futile effort to pass title from one to another, has been made, a transaction in which the actors were prompted by good intentions and honest motives, or that the abortive product of a corrupt or fraudulent transaction

has subsequently become a subject of investment or dependence by persons other than the perpetrators of the fraud. To permit it to become the shield and protection of admitted fabrication of papers having the form of muniments of title, such as forged deeds and wills and deeds made by men having no titles, at the instance of persons having knowledge of their lack of title, for the express purpose of founding claims thereon, would be a flagrant perversion of it to unworthy purposes and a departure from the judicial intent and design in the adoption thereof.

Consistently with this general view of the statute, the courts, with few exceptions, have declared that possession under color, to be adverse, must not be fraudulent. "It must be *bona fide* but it is not necessary that the claimant should believe his claim to be a good or valid one. He may know that some other person has the better right. It is not necessary that he should think his claim good in its inception, for it generally begins in and presupposes wrong; but it must not be fraudulent, nor, except in certain cases well settled, involve any breach of trust." *Swann* v. *Young*, 36 W. Va. 57. An Illinois statute declaring every person in the actual possession of land or tenements under claim or color of title, made in good faith, continuing in such possession for seven consecutive years and paying all taxes assessed on the land, should be held and adjudged to be the legal owners thereof, was interpreted as requiring good faith in the procurement of color of title. And for its definition of the term "color of title," the court went to the common law and its former decisions under the ordinary statute of limitations. In the course of its opinion, the court said: "It affords no evidence, to my mind, that the legislature intended to change the meaning of color of title, as settled under the limitation of twenty years, to a higher grade, or *prima facie* title, but rather to extend to the shorter period over another larger class of the cases left alone to the protection of the longer period. I am not able, therefore, to draw from the language of the act, nor from the circumstances under which it was passed, any inference or conclusion that "claim or color of title" were used, or intended to be used, in any other sense than that known, used and settled under the existing acts of

limitation." *Woodyard* v. *Blanchard,* 16 Ill. 424, 431.
Following this decision and other later ones, the same court
said, in *Dickinson* v. *Breeden,* 30 Ill. 275, 326, "The current
of the decisions of this court is, that color of 'title,' made in
good faith, is shown by any deed or instrument in writing
which purports on its face to convey title, which a party is
willing to, and does, pay his money for, apart from any fraud,
and pays all the public taxes assessed upon the land so con-
veyed."

That fraud on the part of the grantee, in the procure-
ment of color of title, denies him the protection of the law
of adverse possession, under color, was affirmed in *Gregg* v.
*Sayre,* 8 Pet. (U. S.), 244, in which a judgment was reversed
on account of a charge in which the court told the jury knowl-
edge of fraud on the part of the grantee was immaterial. In
*Wright* v. *Mattison,* 16 How. (U. S.), 50, the federal Supreme
Court approved the doctrine of the Illinois court, respecting
the definition of color of title, to which reference has been
made. "When, however, the deed relied upon, as giving color
of title, has been obtained by fraud or forgery; or when the
grantor had no title, and this is known to the grantee who
sets up and relies upon his adverse possession under it; in
these and like cases, the deed will avail the party nothing."
*Saxton* v. *Hunt,* 20 N. J. L. 487. "We are satisfied that the
execution of this deed and the bill of sale were not good faith
transactions, and that the deed was made and received with
the hope of thereby, in some way, fabricating a claim of title."
*Laraway* v. *Zenor,* 100 Ia. 181, 187. Sufficiency of the deed,
as color, was denied in the decision of the case. "A deed
fraudulently obtained is not available as the foundation of
an adverse possession, so as to avoid a subsequent conveyance;
nor is a deed available for such purpose executed by a person
assuming to act as the attorney of the grantor, but without
authority, when such want of authority is known to the
grantee." *Livingston* v. *Peru Iron Co.,* 9 Wend. (N. Y.),
511. "There can be no color of title in an occupant who
does not hold under any instrument, proceeding, or law pur-
porting to transfer to him the title or give to him the right
of possession. And there can be no such thing as good faith
in an adverse holding where the party knows that he has no

title, and that, under the law, which he is presumed to know, he can acquire none by his occupation.'' Mr. Justice Field in *Deffebach* v. *Hawke,* 115 U. S. 392. ''I would say that an entry is by colour of title, when it is made under a *bona fide* and not pretended claim to a title existing in another. * * * This much it is proper to say in order to restrain the generality of expressions used more particularly by myself. These were predicated either of a settler who claims a title of his own origination, or of a mere intruder, usually called a squatter, who claims no title at all; not of one who claims the title of another whose limits have been legally defined by a survey.'' Chief Justice Gibson in *M'Call* v. *Neely,* Watts' Rep. Vol. 3, p. 69. ''A mere squatter on a lot of land, without color of title or claim of right, cannot defeat the title of the true owner by conveying the land to other purchasers, who have full knowledge of the nature and character of the title when they purchase it, although they may have been in possession of the land for seven years under such title. The law will not permit the true owner to be defrauded of his land in that way.'' *Brown et al.* v. *Wells,* 44 Ga. 573. The doctrine of this case and others of the same state rests upon a statute as well as the common law, but that statute may be merely declaratory of the common law as there understood. However this may be, the decisions of other courts here given do not rest upon any statutory modifications. They simply interpret and apply the ordinary statutes of limitations, under the operation of the rules of construction.

Here, as is so often the case, an unfortunate conflict of authority is found. The courts of North Carolina and Tennessee hold the contrary, saying the statute is one of repose and bars in all cases not specifically excepted from the operation thereof. *Reddick* v. *Leggat,* 3 Murph. (N. C.) 539; *State* v. *Seals,* 165 N. C. 409; *Oliver* v. *Pullam,* 24 Fed. Rep. 127; *Blantire* v. *Whitaker,* 30 Tenn. 313; *Porter's Lessee* v. *Cocke,* 8 M. & Y. (Tenn.), 28. In two of these cases, conflicting grants from the state were involved, *Reddick* v. *Leggat* and *Oliver* v. *Pullam.* The fraud charged pertained to the procurement of state grants, and made them merely voidable, by proceedings for the purpose which had been neglected, and

it was not permissible to attack them collaterally.  Hence, there was no occasion to inquire whether such fraud vitiated them as color of title.  They were analogous to voidable deeds passing between individuals.  Of course such a deed is color of title.  It actually passes title, but is subject to impeachment.  The circumstances of the other North Carolina case, as set forth in the petition, conclusively negatived any intention to obtain a stranger's land.  The grantee was in possession of the land, in succession to his ancestor, owner by resultant trust and mortgagor to one under whom the plaintiffs claimed.  *Blantire* v. *Whitaker*, decided in 1850, involved only ancient defects of title, dating back more than thirty years.  If any of them had been occasioned by fraud, none of the claimants had been participants therein.  In *Porter's Lessee* v. *Cocke*, the deed was expressly held good and valid as to Cocke.

Wood on Limitations, at sec. 259, relying principally upon *Reddick* v. *Leggat*, 3 Murp. 529, says the weight of authority sustains the rule that any instrument which purports to convey lands, and describes them definitely, and upon its face appears to be a valid deed for the conveyance of the premises, is sufficient color of title, regardless of the question of *bona fides* or *mala fides* on the part of the grantee under it, and cites, as further authority for the proposition, *Finlay* v. *Cook*, 54 Barb. 9.  An examination of that case discloses absolute silence as to this proposition or any suggestion thereof.  A note to sec. 258 of that work says the decisions in *Livingston* v. *Peru Iron Co.*, 9 Wend., 511 and *Jackson* v. *Andrews*, 7 Wend. (N. Y.) 152, arose under the statute concerning champerty and maintenance.  There is no reference to the statute in the former and the latter involved a *pendenate lite* purchase, which the court declared to be champertous and void.  In taking this position, the author above referred to, seems to have been influenced largely by views expressed in Tyler on Ejectment, 865, 866.  That author approving and commending the decision in *Reddick* v. *Leggal*, invokes in support thereof, the general principles of the statute of limitations as one of repose, and repeats them from *Stowell* v. *Zouch*, Plowden, 358, 371, *Maddox* v. *Bond*, 1 Irish Term Rep. 332, 340 and *Chelmondeley* v. *Clinton*, 2 Jac. & Walk. 139, 140

and 155. None of these cases· deal with the inquiry we have. In none of them, was any deed or other paper of fraudulent origin involved. Nor did any of them, to any extent or in any manner, deal with the question of color of title. In view of the narrow basis of the conclusion adopted by these authors and the many authorities contradicting their position, we are unable to give it our approval.

The proposition is fallacious in this, that it assumes the doctrine of color of title to be a part of the statute of limitations. It is most emphatically and distinctly not. It is no more than a judicial fiction devised for the purpose of working out just results under the statute. In reality, it is judicial addition to the terms thereof, made in obedience to its spirit. Saying nothing about color of title, the statute merely denies a remedy for a right of entry, after the lapse of a stated period of time, and thus secures the occupant his possession. But for the doctrine of color of title, that possession would be limited to his actual enclosure, improvement or cultivation. In order to effectuate the legislative intention, the courts have said that, if the occupant entered or claimed title under an instrument which has the semblance of paper title, this possession is deemed to extend to the boundaries described in it, nothwithstanding the invalidity of the paper itself, and thus give him vastly more than his enclosure. The purpose of this addition was to make ·it work out just results, not injustice, nor to open the door for the perpetration of frauds. Neither judicial invention nor legislative declaration, puts the courts under obligation to permit its use for unworthy purposes. To deny the benefit of this doctrine, to an occupant who has entered under· a paper title for which he paid nothing and which he obtained for the specific purpose of defeating the right of another person, works no hardship upon him. He has parted with nothing. To the extent of his improvement or enclosure, the statute, without the aid of the doctrine of color, protects him, and that is as far as his claim has any merit.

No doubt, after a paper title has been originated and put into existence and has operated as an inducement to invest in it and take possession under it, an occupant claiming thereunder would be entitled to protection. However fraudulent

the paper may have been in its inception, he is a meritorious claimant. He has paid out his money and made improvements, on the faith of the title, and it would be unjust to expose him to the hazard of a verdict on the question of knowledge of the fraud. His situation is vastly different from that of the perpetrator of the wrongful act. Hence, only the latter should be denied the benefit of the paper as color of title.

Deeming it entirely just, accordant with legal principles and consistent with the definition, office and function of color of title, to hold that a person in possession of land cannot rely upon paper title, not good in law, for which he paid nothing and which he has himself fabricated, or procured to be made, for the purpose of obtaining land he neither occupies nor owns, and with no other intention than to enlarge the boundaries of land, he is entitled under the terms of the statute of limitations, to hold against the rightful owner, we proceed to inquire whether color of title, as thus defined, is such color as is contemplated by the constitutional and statutory provisions under which the petitioner claims.

From what has been said concerning the origin and nature of the doctrine of color of title, it is manifest that the phrase by which it is designated is technical and peculiar to the common law. Hence, its definition is to be found there and not elsewhere. That is the source from which it was imported into the constitution and the statute. To ascertain what it means, we must resort to its origin and repository. *Ex parte Bornee*, 85 S. E. 529; *Daniels* v. *Simms*, 49 W. Va. 554; *N. & W. Railway Co.* v. *Prindle*, 82 Va. 122, 130; *Abbotsford* v. *Johnson*, 98 U. S. 440; 36 Cyc. 1118, 1145. This rule is not operative, however, if contrary intention is disclosed by the context. The question is purely one of intention. Nothing in the terms of the constitutional provision or the statute indicates intention that the phrase, "color of title," shall have a meaning different from that which it has at common law. It is unattended by any limiting or qualifying words, and nothing in the general purpose or the spirit of the provisions warrants deviation from its technical meaning. The implied invitation to settle upon and improve forfeited land does not argue any intention to give it to persons other than occupants

under claim of title and color of title. In the one case, the occupant gets only such land as he has improved or enclosed. In the other, he gets more than that, but to allow him to do so does not necessarily operate as an inducement to settlement and improvement. Under the doctrine of color, a mere *pedis possessio* may give right to hundreds of thousands of acres. To say anything in the general purpose of the provisions indicates legislative or popular intent to narrow or liberalize the meaning of the phrase would be a mere surmise or conjecture. We think the phrase means in the constitution and the statute, just what the courts have said it means and that it affords no opportunity to individuals to fabricate paper title, with express intent and purpose to obtain what does not belong to them, or to make additions to what the law gives them as persons in possession under claim of title.

Agreeably to these principles and conclusions, we reverse the decree, reinstate the petition of King and remand the cause, for ascertainment, under the principles here stated, of the portion of the 200 acre tract Lowry is entitled to have dismissed, dismissal of the same and redemption of the residue thereof by King, as against the state and Lowry and his *cestuis que trustent.*

*Reversed and remanded.*