BAILEY *v.* JARVIS.

4-8394                                           208 S. W. 2d 13

Opinion delivered January 12, 1948.

Rehearing denied February 16, 1948.

*Wm. H. Glover* and *Graves & Graves*, for appellant.

*McRae & Tompkins*, for appellee.

SMITH, J. We have on this appeal a very large record involving the title to a very small tract of land. Many witnesses testified on behalf of both appellant and appellee, and there are such conflicts in the testimony that we make no attempt to reconcile it.

The case involves the title to 12.65 acres of land lying somewhat in the shape of a triangle between two branches running easterly and westerly across the NW¼ of the NE¼, section 31, T. 13, S., R. 21 W, in Nevada county, Arkansas, and intersecting before they leave the west side of the forty-acre tract. One of the disputed questions of fact is whether there are two branches which traverse the land or only one. Unquestionably there is one branch, this having defined banks carrying running water. This is referred to as the South Branch and we shall so designate it. The other is referred to by many witnesses as a "slash" which carries water in the wet or rainy sesason of the year; and is dry at other times. For purposes of distinction we shall refer to it as the North Branch. There are 7:35 acres of land in this 40-acre tract north of the North Branch.

There appears to be no dispute as to the ownership of the title of the respective grantors through whom the parties claim their titles, and we shall not deraign them. The plaintiffs are the widows and heirs of R. L. Jarvis who in 1899 obtained a deed covering other lands and "The N½ of the NW¼, NE¼ section 31, T. 13 S., R. 21 W., containing 15 acres more or less, the frl. N½ of the NW¼ of the NE¼ is north of a certain branch." We

do not construe this deed as covering all the land in the 40-acre tract north of the certain branch, which branch is the South Branch, or running branch, but only that part of the N½ of the NW¼ of the NE¼, which is north of that branch.

The defendant, W. R. Bailey, is the grandson of R. M. C. Bailey whose title he acquired by inheritance, and by purchase from the other heirs of R. M. C. Bailey. The title of R. M. C. Bailey, the ancestor, was acquired by a deed in 1896 covering "The fractional NW¼ of section 31, T. 13 S., R. 21 W., containing 25 acres." It is thus seen that these two deeds together covered the entire forty-acre tract and the parties have, since the date of their respective deeds, paid taxes on the tracts of land described as containing, one fifteen acres, the other twenty-five acres.

Defendant Bailey had sold the timber on the disputed area to the Fowler Lumber Company, and the suit was brought to recover the value of the timber, the amount thereof being covered by a stipulation. There was a judgment against Bailey and the Lumber Company which had cut and removed the timber for the value thereof. The judgment for the value of the timber was in favor of the Caney Creek Lumber Company, which had intervened, the intervention being based upon a sale with warranty of title to the timber from the appellees, Jarvis heirs, to the Caney Creek Lumber Company, and judgment over was rendered against the defendant Bailey in favor of the Fowler Lumber Company upon his warranty of the title to the timber which he, Bailey, had sold to the Fowler Lumber Company, and the appellant Bailey, and the Fowler Lumber Company have appealed.

For the reversal of the decree rendering the judgment stated, and quieting the Jarvis title to the 15-acre tract, it is insisted that appellees, the Jarvis heirs, have shown no title sufficient to enable them to maintain the suit. But we think it sufficiently appears from the facts stated that appellees have the record title to the 15-acre tract, and appellants' title to the 25-acre tract is not questioned or involved. Appellees therefore have the

right to recover the value of so much of the timber as was cut from the 15-acre tract, and to have their title to that tract quieted, except that part thereof to which appellees have lost title by adverse possession, and we proceed to consider the question of this adverse possession.

Appellees concede that for a period of time beginning in 1917 the Baileys had possession of a portion of the 15-acre tract and cultivated it, and it is clearly shown that this possession was continued for a period of more than 7 years, but we are furnished with no description of the exact area so occupied for a period of more than 7 years. Possession of some part of the 15-acre tract is admitted, but appellees claim that possession was permissive, and therefore could not be adverse to the land so occupied.

Without reviewing the extensive and highly conflicting testimony as to that fact, we announce our conclusions to be that the possession was not permissive, but was hostile and adverse. It was undisputed that this possession had its inception in a personal difficulty.

On the other hand it is contended by appellant Bailey that he has title to a part of the 15-acre tract, not only by actual adverse possession, but also by a possession based upon two certain deeds which enlarged his possession to 33 acres. This contention is based upon the following facts. R. M. C. Bailey, who acquired the title to the 25-acre tract, as hereinbefore stated, was survived by a daughter and four sons, appellant, W. R. Bailey being one of the sons. In 1933, the daughter and one of the sons executed a deed to their undivided two-fifths interest to appellant W. R. Bailey, described as follows:

"Our entire interest, being an undivided two-fifths interest, in and to the following lands, to-wit: The southwest quarter of the northeast quarter of section 31: and all that part of the northwest quarter of the northeast quarter of said section 31 lying and being situated south of the dry spring branch running across the north part of said forty acres, containing 33 acres, more or less—

All situated in township 13 south, range 21 west, and containing in all 73 acres, more or less, it being agreed and understood that the fence near said branch is the line between the lands herein conveyed and the north part of said forty acres now owned by the R. L. Jarvis estate.

"The lands above described belonged to R. M. C. Bailey, our father, and it is our intention to convey all our interest in and to all that part of the W½ NE¼ of said section owned by him at the time of his death.

"This deed is intended to include, and shall include, not only all interest which we now own in and to said land, but any and all interest which we may hereafter acquire, by inheritance or otherwise."

A little later, and in the same year the other two sons of R. M. C. Bailey executed to their brother, the appellant, W. R. Bailey, a deed to their two-fifths interest, the description employed being identical with that copied above in the deed from appellant's brother and sister. The insistence is that these deeds constituted color of title, and were the instruments by which appellant acquired title in severalty, and that as he had possession of a part of the land described in the deeds, his color of title operated to extend his possession to all the land described in these deeds. The cases of *Connerly* v. *Dickinson,* 81 Ark. 258, 99 S. W. 82; *Wells* v. *Rock Island Imp. Co.,* 110 Ark. 534, 162 S. W. 572; *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475, which are cited are to the effect that actual possession of a part of the land described in the deed gives the grantee possession constructively of all the land described in the deed. Also cited is the case of *Morgan* v. *Kankey,* 133 Ark. 599, 203 S. W. 844, which holds that the rule above stated applies, although the grantor in the deed had no record title.

We think the cases cited are not applicable here for several reasons, among others these: The Bailey heirs could not by deeds from one to another fix a boundary between their land and that of another person not a party to those conveyances. These deeds declare their

purpose to be to convey all their interest in that part of the W½ of the NE¼ which their father owned at the time of his death, and all interest which they might thereafter acquire by inheritance or otherwise. Yet the deeds undertook to convey lands which the father of the grantors did not own at the time of his death. We think the deeds to appellant were simulated and conveyed no color of title, except as to the lands in which they owned an interest. They were made by persons who knew they had no title to a part of the land they were purporting to convey to a grantee who was equally aware of that fact. Appellant and the grantor in one of these deeds was asked to explain when and how his father's holdings had been enlarged from 25 to 33 acres. Their answers were uncandid, evasive and unsatisfactory, one of the answers being that the deed to their father conveyed 25 acres more or less. The alleged color of title appears to have been, a mere fabrication designed to extend their possession to land not actually occupied, and the description of the land is too defective to constitute color of title.

The value and effect of a fabricated color of title is thoroughly covered in the case of *State* v. *King*, 77 W. Va. 37, 87 S. E. 170, which is reported and extensively annotated in L. R. A. 1918E, 1044. In that opinion it was said: ''Color of title is not, in law, title at all. It is a void paper, having the semblance of a muniment of title, to which, for certain purposes, the law attributes certain qualities of title. Its chief office or purpose is to define the limits of the claim under it. Nevertheless, it must purport to pass title. In form, it must be a deed, a will, or some other paper or instrument by which title usually and ordinarily passes. Such qualities as are imputed to it by the law, for limited purposes, are purely fictitious and are accorded to it only to work out just results. Fictions are never used in procedure or law for any other purpose. (Citing cases).''

It was there further said: ''To permit it to become the shield and protection of admitted fabrication of papers having the form of muniments of title, such as forged deeds and wills and deeds made by men having

no titles, at the instance of persons having knowledge of their lack of title, for the express purpose of founding claims thereon, would be a flagrant perversion of it to unworthy purposes and a departure from the judicial intent and design in the adoption thereof.''

Now the decree from which is this appeal rendered judgment for the value of the timber cut on appellees' land and that part of the decree is affirmed, notwithstanding appellant's adverse possession of a part of the fifteen-acre tract. It is not to be assumed, and is not contended, that any part of the commercial timber was cut and removed from land which had been cleared and occupied for a period of more than seven years. But the decree also quieted appellee's title to the entire fifteen-acre tract. This we think was erroneous under our finding that a portion of that tract had been occupied without permission and adversely for more than seven years, but we are unable from the record before us to determine the area or the description thereof, and the decree must therefore be reversed in order that this area and the description thereof may be determined, and appellees' title to the fifteen-acre tract will be upheld, except as to so much thereof as has been lost by adverse possession.

### On Rehearing.

SMITH, J. In the petition for rehearing it is insisted that the judgment for the value of the timber, included timber cut on land which the opinion states did not belong to Jarvis. In the opinion we said, ''We do not construe this deed as covering all the land in the 40-acre tract north of the certain branch, which branch is the South Branch, or running branch, but only that part of the N½ of the NW¼ of the NE¼ which is north of that branch.''

The insistence now is that the judgment from which is this appeal covers timber cut on land which was in fact south of that branch, which Jarvis did not own. This may be true, but the reason is not clear. At any rate it is not shown how much, if any, of the timber was

cut south of the branch. As the judgment is reversed to ascertain what part of the land. Jarvis has lost by adverse possession permission is granted to ascertain also whether any of the timber south of the branch was cut, and if so, the amount and value thereof may be ascertained and the judgment as to the value of timber cut will be modified by reducing it to the extent of the value of timber cut south of the branch, if any. In other respects the petition for rehearing is overruled.