ALTENBERND, Judge. .
Porter J. Goss and Mary R. Goss appeal the trial court’s final order declaring that Wallace H. Dunbar holds title to a small strip of land by adverse possession.[1] We conclude that the trial court resolved this dispute under a theory of adverse possession by color of title that was not tried by the parties. Perhaps as a result of this fact, the trial court resolved the issue under an' incorrect burden of proof.' We conclude that the parties are entitled to retry the issue of adverse possession.
In 1891, S.B. Woodring received a homestead grant from the United States under the Swamp and Overflowed Land Act. He obtained title to 120 acres of land on Sani-bel Island. This region of Sanibel Island is now named “Woodring’s Point” and is adjacent to the eastern edge of the John Ding Darling National Wildlife Reserve.
In 1902, S.B. Woodring recorded a subdivision plat that subdivided a portion of his land. The Woodring Subdivision consisted of sixteen lots at the end of a narrow isthmus dividing Ladyfinger Lake from Tarpon Bay. At the northern end of this subdivision, Mr. Woodring retained a large parcel that remained in his family for many years.
In 1968, Mr. Dunbar and his former wife purchased lot 16, the lot adjacent to the unplatted Woodring parcel. In 1995, in connection with a divorce, Mr. Dunbar obtained sole title to the eastern half of lot 16, which fronts on Tarpon Bay. By that time, a small road divided the eastern half of the subdivision from the western half.
In 1998, Mr. and Mrs. Goss purchased a lot from the estate of Esperanza Woodr-ing. This lot had been created recently by further subdivision of the remaining un-platted portion of the Woodring property. It is immediately adjacent to Mr. Dunbar’s lot. Thus, Mr. Dunbar’s northern property line is the Goss’s southern property line.
Since 1902, several surveys have been performed on this fragile isthmus. Not .surprisingly, the surveys generated some conflict concerning the northernmost property line of the original Woodring Subdivision. A small slice of land about six- to ten-feet wide has been in dispute among *187 the surveys. After Mr. and Mrs. Goss purchased their lot and began constructing a home near the disputed property line, Mr. Dunbar gave notice that he claimed ownership under surveys conducted prior to 1989 that are most favorable to him. Mr. and Mrs. Goss claimed ownership under a more recent survey, the Johnson survey, which had been performed in 1989 for the Dunbars. In connection with the 1989 survey, new survey markers were installed and one or more markers installed in 1981 were removed.
Mr. Dunbar filed an action to quiet title relying on the older surveys. His complaint did not allege adverse possession under color of title. Mr. and Mrs. Goss filed a counterclaim to quiet title relying on the newer survey. In his answer to the counterclaim, Mr. Dunbar raised adverse possession as an affirmative defense without pleading factual allegations to support this “defense.” The parties scheduled an evidentiary hearing but never filed any documents identifying adverse possession as an issue for resolution at the hearing. The court’s order in preparation for the hearing did not identify the issues to be resolved at the hearing.
The evidentiary hearing occurred in October 2000. From the opening statements to the end of the hearing, each party tried to prevail by proving the validity of their preferred survey. Mr. Dunbar briefly testified that he cleared underbrush along the property line consistent with his understanding of that line. He relied on recent photographs to demonstrate his clearing of the land. He did not disturb any trees in the disputed area, but cleared the underbrush down to the soil. He apparently also used this strip on occasion to back a boat into the water.
At the conclusion of the hearing, the trial court ruled that the property line established by the Johnson survey was the correct line. Mr. Dunbar has not appealed that ruling, and it is supported by competent, substantial evidence. Thus, there is no basis for this court to revisit that determination. However, the trial court then proceeded to rule that Mr. Dunbar had raised adverse possession under color of title as an affirmative defense. The trial court noted that this pleading was poorly drafted, but it decided that the parties had tried the issue by consent in light of Mr. Dunbar’s testimony. Thus, the trial court found that the Johnson survey established the correct property line by the greater weight of the evidence, but that Mr. Dunbar was entitled to have the strip' of land titled in his name by virtue of adverse possession.
Adverse possession under color of title is a statutory claim. See § 95.16, Fla. Stat. (2001). Since 1968, this statute has been substantially amended on several occasions, and the elements of this claim are somewhat dependent upon the dates of possession.[2] The plaintiff must prove this cause of action, not by the greater weight of the evidence, but by “clear and positive proof’ or by “clear and convincing evidence.” See Downing v. Bird, 100 So.2d 57, 65 (Fla.1958); Bailey v. Hagler, 575 So.2d 679, 681 (Fla. 1st DCA 1991). In general, the claim requires proof that the party claiming the land by adverse possession under color of title has been in continuous, open, exclusive, and notorious possession of the land for an uninterrupted period of seven years. See generally Robert G. Cochran & Andrew K MacFarlane, Boundary Disputes, in Florida Real *188 Property Litigation, § 2.10 (Continuing Legal Educ. Publ’ns, The Fla. Bar, 3d ed.2001).
Because Mr. Dunbar was primarily seeking to establish a property line by survey and not by adverse possession, he never pleaded the elements of any specific version of this statute. He never clearly established the date when he commenced his adverse possession of this strip of land. For example, we are uncertain whether he believes that the seven-year period commenced in 1968 or even earlier when a prior owner may have first mowed the underbrush, or in 1989 when the new survey markers were installed. He never provided positive proof of open, exclusive, and notorious possession for a continuous period of seven years from his chosen commencement date.
Most adverse possession claims involve evidence of a fence, a substantial enclosure, or cultivation. See § 95.16(2), Fla. Stat. (2001). Mr. Dunbar’s theory does not depend upon these usual proofs. Instead, he is arguing that he obtained exclusive and notorious possession of this property by keeping it cleared of all vegetation except for trees, and by occasionally using the strip as a boat ramp. This case does not involve a typical property line between two lots in a residential neighborhood. For virtually the entire time that Mr. Dunbar lived adjacent to the Woodring property prior to the Goss’s purchase of their lot, the Woodring property was apparently a tropical jungle with an unoccupied, dilapidated house. We are uncertain that Mr. Dunbar’s evidence that he cleared undergrowth to a line that he believed to be the property is sufficient evidence to establish the high burden of proof required in this setting. It is clear from the record that the trial court did not appreciate the heightened proof required for this theory. We emphasize that we are not holding that Mr. Dunbar cannot prove adverse possession; we simply conclude that the issue must be examined in greater detail in the trial court before any judgment is entered.
Mr. and Mrs. Goss did not move for involuntary dismissal of an adverse possession theory at the close of Mr. Dunbar’s case, even though they may have been entitled to such a dismissal. They clearly failed to make this motion because they did not appreciate that the “affirmative defense” was part of Mr. Dunbar’s primary case. In fairness to Mr. Dunbar’s counsel, we are inclined to believe that he would have argued in response to such a motion that the parties had not intended to try this more complex issue during this evidentiary hearing. Mr. Dunbar’s counsel never requested to amend his complaint to conform to the limited evidence on the issue of adverse possession.
On appeal, Mr. and Mrs. Goss argue that the issue of adverse possession was not tried by consent. Under the standards discussed in Buday v. Ayer, 754 So.2d 771 (Fla. 2d DCA 2000), we agree. Because neither side has had a full and fair opportunity to litigate the issue of adverse possession under color of title, we reverse the order on appeal and remand for a new trial of that issue alone. On remand, it may be helpful for the trial court to require Mr. Dunbar to amend his complaint to allege this theory in greater detail.
Affirmed in part, reversed in part, and remanded for further proceeding consistent with this ruling.
BLUE, C.J., and WHATLEY, J„ Concur.

. Ralph S. Woodring is also an appellant in ' this Case but has not been actively involved in this appeal.

. See
Ch. 74-382, § 11, Laws of Fla.
Ch. 77-174, Laws of Fla.
Ch. 87-194, § 1, Laws of Fla.
Ch. 95-147, § 522, Laws of Fla.