SAWAYA, J.
Luke Frazier and his mother, Connie Frazier, took real property owned by Richard Goszczynski without his consent. The scheme the Fraziers contrived to acquire the property is based on a twisted and distorted view of the law of adverse possession under color of title. After the Fraziers took possession of the property, the trial court ousted them by entering a judgment quieting title in Goszczynski. The Fraziers’ scheme and their actions in implementing it are particularly brazen and mischievous. Equally brazen is their attempt to persuade this court to affix its imprimatur to their distorted view of the law. We are not persuaded.
 Goszczynski owned real property in Hernando County. He deraigned title from Eugene Zielinski, who conveyed the property by warranty deed to himself and Goszczynski as joint tenants with right of survivorship. Zielinski subsequently died, leaving Goszczynski the sole owner of the property. From what we glean from the record, Goszczynski became delinquent in paying the ad valorem taxes. It is unknown whether this was lassitude caused by a physical or mental infirmity, a lackadaisical attitude toward management of his property, or whether Goszczynski did not know Zielinski had passed away and assumed Zielinski was paying the taxes. In any event, the delinquency did not go unnoticed by the Fraziers. They drew up a quitclaim deed and attempted to convey the property from Luke Frazier, as grant- or, to himself and his mother as grantees. The stated consideration for the purported conveyance is “love and affection by the grantee, the receipt of which is hereby acknowledged.” The Fraziers had never owned any interest in the property and became interlopers in the chain of title when they recorded their wild deed in the public records. A wild deed is a purported instrument of conveyance executed by the named grantor knowing that he or she has no title of any kind to the property described therein. See Hyland v. Kirkman, 204 N.J.Super. 345, 498 A.2d 1278 (1985). Luke Frazier admits in the pleadings that *544 the deed is “wild” and that he executed it for the purpose of setting up a claim of adverse possession under color of title.
After the deed was recorded, the Fraziers took possession of the property, paid the delinquent taxes, and rented the property to others, keeping the rental payments for themselves. When this lucrative enterprise was discovered by Goszczynski, he filed suit to quiet title to his property. The Fraziers filed a counterclaim for quiet title, claiming that they adversely held possession of the property in excess of seven years under color of title (the wild deed) and that the property belonged to them pursuant to section 95.16, Florida Statutes (2003).
Goszczynski filed a motion for summary judgment. The trial court granted the motion and entered the final judgment we now review quieting title in Goszczynski. In the motion, Goszczynski alleged that the Fraziers did not have a legitimate claim to his property and that the quitclaim deed they contend constitutes color of title is invalid. The motion also alleged that “Luke Aaron Frazier was prosecuted for fraud as being the owner of the real property and was convicted. Exhibit A attached hereto is a certified copy of the information and Judgment of the conviction.” The attached information charged Luke Frazier with organized fraud for filing a forged and fraudulent quitclaim deed misrepresenting himself as the owner of real property that belonged to Goszczyn-ski. The judgment of conviction reflects that a jury found him guilty of that charge. In their briefs, the Fraziers present a very vague claim that the conviction may have involved Luke Frazier’s dealings with a tenant, leaving the reader to conclude that this is a topic of unwelcome conversation. They are, however, far more assertive in their argument decrying the inequity of imputing' Luke Frazier’s crime to his mother, who has not been convicted of anything. They carry this argument through to the conclusion that even if the conviction taints Luke Frazier’s claim to the property, it should not taint his mother’s. We do not know whether the mother was a knowing participant in the scheme to take Goszczynski’s property or an unwitting dupe used by Luke Frazier in an attempt to establish an air of legitimacy to the conveyance. No matter. The issue we must resolve is whether the Fraziers’ quitclaim deed constitutes color of title under the law of adverse possession, and that issue does not depend on criminal convictions of Frazier or his mother. And we do not need a criminal conviction of either to reach the conclusion that the scheme they employed should not succeed.
Before we proceed further, we note that it is not necessary to examine the specific differences between adverse possession under color of title and without color of title other than to say that they are different statutory claims occupying separate sections in the Florida Statutes, distinguished mainly by the presence or absence of the color of title element. Compare § 95.16, Fla. Stat. (2003) (adverse possession under color of title), with § 95.18, Fla. Stat. (2003) (adverse possession without color of title). We also note that the law of adverse possession is wrapped in its own array of terminology utilized by the courts and the Legislature that must be deciphered — the terminology, for example, of notorious, adverse, hostile, and color of title. We focus on the latter because the Fraziers make their claim under section 95.16. Color of title is, therefore, an element they have the burden of establishing, see Bonifay v. Garner, 503 So.2d 389, 394 (Fla. 1st DCA 1987), and Goszczynski argues that they did not meet that burden.
There is no specific statutory definition of “color of title,” and there are few Florida cases that say what it is or *545 what it means. From the text of section 95.16(1), we see that color of title references “a claim of title exclusive of any other right” founded on a written instrument of conveyance. § 95.16(1), Fla. Stat. (2003). A quitclaim deed may, depending on the circumstances, satisfy the color of title requirement. See Steputat & Co., Inc. v. Bidwell, 599 So.2d 762, 763 (Fla. 5th DCA 1992). But color of title means more than a purported instrument of conveyance: the circumstances surrounding its execution and delivery require consideration. We believe that color of title requires that the deed of conveyance be accepted by the grantee in good faith and with the belief that it constitutes a legitimate conveyance of title. See McLemore v. McLemore, 675 So.2d 202, 206 (Fla. 1st DCA 1996) (“The deed purporting to convey the property must be accepted in good faith and in the honest belief that it vests title in the claimant.”); Steputat, 599 So.2d at 763 (“The deed must be accepted in good faith and in the honest belief that it vests title in the claimant.”); Bonifay, 503 So.2d at 393 (“.Further, the instrument must be accepted in a good faith and honest belief by the grantee that it vests title to the property in the grantee. Adverse possession under color of title may not be had where title is accepted with knowledge that it is invalid or that the grantor had no title in the property.” (citation omitted)); Simpson v. Lindgren, 133 So.2d 439 (Fla. 3d DCA 1961). Courts in other jurisdictions agree that adverse possession under color of title may not be established if the purported instrument of conveyance is accepted with knowledge that it is invalid or that the grantor had no title to convey.[1] Although the concept of good faith is not pervasive throughout the statutory framework that is the law of adverse possession, it is a requirement to establish color of title.
*546 The Fraziers actually assert they had a good faith belief that the wild deed they manufactured was a valid conveyance. We find this assertion incredible in light of the undisputed facts that they never owned any interest in the property and that they prepared the deed as a conveyance from Luke Frazier, an interloper, to himself and his mother, another interloper. This assertion becomes even more incredible when we consider the admission that the deed was manufactured for the purpose of conjuring an adverse possession claim against Goszczynski. There is also the rather unique notion adopted by the Fraziers, but foreign to us, that a valid consideration of a conveyance of land from oneself to oneself is the love and affection that one has for oneself. We reject this nonsensical assertion of good faith. A man who has no title to property cannot contrive a conveyance from himself to himself and in good faith believe that he has created a valid conveyance of any interest in anything. Including a parent as a grantee adds nothing to the empty endeavor.
There will always be those who attempt to distort the law for personal gain. The enumerable cases catalogued in the law books and treatises render that an obvious conclusion. Among them are cases involving schemes very similar to the Fraziers’. One case was decided almost one hundred years ago. See State v. King, 77 W.Va. 37, 87 S.E. 170 (1915). The scheme did not succeed then and it will not succeed now. The courts have declared on many occasions that taking property by adverse possession is not a favored concept. See Candler Holdings Ltd. I v. Watch Omega Holdings, L.P., 947 So.2d 1231 (Fla. 1st DCA 2007); Bentz v. McDaniel, 872 So.2d 978, 981 (Fla. 5th DCA 2004). They have also held that the burden of proof is a heavy one (by clear and convincing evidence), and that any doubt shall be resolved in favor of the title holder. Bentz, 872 So.2d at 981; Goss v. Dunbar, 834 So.2d 185, 187 (Fla. 2d DCA 2002). If the law is not favored when claimants properly apply it, it will be far less favored when claimants improperly apply it. If the burden of proof weighs heavy on those who utilize the law for legitimate purposes, how much more burdensome will it be for those who attempt to utilize it for illegitimate purposes. And if doubts about a claim are resolved in favor of the title holder, how much more favor will be heaped upon him when a wild deed is presented by the claimant showing that the claimant, grantor, and grantee are one and the same person. The law of adverse possession under color of title does not lend itself to easy manipulation.
The law of adverse possession under color of title was devised to address the perceived need to resolve the ever growing problem of individuals who took possession of property pursuant to a flawed conveyance that they in good faith believed was valid. It was enacted for salutary purposes. It was not enacted to give legitimacy to the actions of fortune hunters and mischievous interlopers who distort the law with the artifice of a wild deed prepared by themselves conveying the property to themselves for the purpose of taking the property of others for their own financial gain. To countenance such conduct would completely undermine the very purpose of the law and transform the Fraziers’ distorted view of it into acceptable standards for others to govern themselves by. This we will not allow. We affirm the judgment under review.
AFFIRMED.
TORPY, C.J., and COHEN, J„ concur.

. See, e.g., Deffeback v. Hawke, 115 U.S. 392, 407, 6 S.Ct. 95, 29 L.Ed. 423 (1885) ("And there can be no such thing as good faith in an adverse holding, where the party knows that he has no title, and that, under the law, which he is presumed to know, he can acquire none by his occupation.”); In re Estate of Duran, 133 N.M. 553, 66 P.3d 326, 335 (2003) ("The use of such tactics to create color of title patently lacks ‘freedom from a design to defraud the person having the better title,’ and we cannot condone it. We agree with the weight of authority from these jurisdictions that a deed cannot suffice as color of title if it never passed from some third party to the one claiming to acquire title by adverse possession.” (quoting Thurmond v. Espalin, 50 N.M. 109, 171 P.2d 325, 329 (1946))); Hyland v. Kirkman, 204 N.J.Super. 345, 498 A.2d 1278, 1292 (1985) ("The court first holds that a bona fide 'claim of ownership’ in a quiet title action ... may not be founded on a wild deed sworn by plaintiff himself.”); White v. Rosser, 27 S.W. 1062, 1063 (Tex.Civ.App.1894) (holding that the heir of one who executed a deed to himself could not claim color of title); Mylar v. Hughes, 60 Mo. 105, 111 (Mo.1875) (holding that it would be "mere fraud” for a person to convey title to a third person who then conveys the deed back again without consideration in order to create color of title); Saxton v. Hunt, 20 N.J.L. 487, 487 (N.J.1845) (summarizing in syllabus, "The deed, relied upon, to give color of title, must have been obtained bona fide. If ... the grantee, who relies upon it to sustain his adverse possession, is aware that his grantor had no title to convey, the deed will avail him nothing”). The court in State v. King, 77 W.Va. 37, 87 S.E. 170 (1915), distinguished the "vastly different" situation of a party who "paid out his money” and took a fraudulent deed in good faith and who thereafter occupied and improved the land for the necessary period based on his good faith in his title from that of the perpetrator of a scheme whereby the perpetrator procured paper title for which he paid nothing and knowing the grantor did not have title, doing so for the purpose of defeating the rights of the true owner. Id. at 173-74. It concluded that color of title "affords no opportunity to individuals to fabricate paper title, with express intent and purpose to obtain what does not belong to them, or to make additions to what the law gives them as persons in possession under claim of title.” Id. at 174.